A00A1790. KAPLAN et al. v. PULTE HOME CORPORATION et al.
(537 SE2d 727)

ELDRIDGE, Judge.

William Kaplan was an independent contractor working as a subcontractor for Kitchen & Bathworld, Inc. d/b/a Diversified Cabinet Distributors, a subcontractor of Pulte Home Corporation, the builder and developer of the subdivision where Kaplan was injured on the job. On December 28, 1995, Kaplan returned to the new home in Roswell to complete a pre-closing cabinet job. In preparation for closing that house and others, Pulte had its independent contractor's subcontractor, America's Best, Inc., pressure wash and hose down the garage and concrete driveways to wash away construction debris and mud from these homes. The temperature was below freezing and caused black ice to form on the driveways. Kaplan fell on the black ice in the driveway and was injured; he collected workers' compensation for his injuries. Kaplan sued Pulte for his injuries. The trial court granted summary judgment to Pulte under two theories of defense: statutory employer's workers' compensation immunity and lack of superior knowledge by the owner. We do not agree and reverse.

1. The threshold issue is whether or not under the facts and circumstances of this case Pulte is entitled to the statutory employer's immunity. We find that it was not.

---

Under OCGA § 34-9-11 (a), the statute provides in pertinent part that:

> [t]he rights and the remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee . . . at common law . . . ; provided, however, that no employee shall be deprived of any right to bring an action against any third-party tort-feasor, other than an employee of the same employer or any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee, notwithstanding the fact that no common-law master-servant relationship or contract of employment exists between the injured employee and the person providing the benefits.

Pulte does not come under any of the three express exceptions to an employee's right to sue a third party. It was not an employee of the same employer; it was neither an insurer nor a person who provided workers' compensation benefits under a contract with the employer; nor was it a "construction design professional." *Warden v. Hoar Constr. Co.*, 269 Ga. 715, 716 (1) (507 SE2d 428) (1998). Thus, the only possible exception to tort liability for Pulte must come as a statutory employer. Id. at 716. See also OCGA § 34-9-8.

Generally, the acceptance of workers' compensation benefits from the employer or its insurer triggers the bar of OCGA § 34-9-11 because such benefits are provided by an employer to the employee. *Mann v. Workman*, 181 Ga. App. 211, 212-213 (1) (351 SE2d 680) (1986), aff'd, 257 Ga. 70 (354 SE2d 831) (1987). However, under the facts of this case, Kaplan was an independent contractor-sole proprietor within the meaning of OCGA § 34-9-2 (e) and had no employer, only a principal. *RBF Holding Co. v. Williamson*, 260 Ga. 526 (397 SE2d 440) (1990). Further, Kaplan's independent contractor's contract with the subcontractor Kitchen & Bathworld compelled him to provide for himself and to pay for his own workers' compensation coverage under OCGA § 34-9-2.2 as a sole proprietor treated as his own employee. See generally *Sherwin-Williams Co. v. Escuadra*, 224 Ga. App. 894, 896 (482 SE2d 505) (1997); *Subsequent Injury Trust Fund v. Lumley Drywall*, 200 Ga. App. 703, 704-705 (409 SE2d 254) (1991). The sole proprietor must make an election to be treated as his own employee, give proper notice to his insurer of his election, and pay an additional premium for his own workers' compensation coverage, which makes his workers' compensation coverage a matter of contract to obtain workers' compensation coverage. See generally OCGA § 34-9-2.2; *Sherwin-Williams Co. v. Escuadra*, supra at 896; *Subsequent Injury Trust Fund v. Lumley Drywall*, supra at 705. Thus, in

accepting workers' compensation benefits, Kaplan received what amounted to his own pre-paid benefits that he provided for himself as a sole proprietor electing to be treated as his own employee. Neither Kitchen & Bathworld nor Pulte provided workers' compensation benefits to him, nor would either be liable to do so unless his own insurer failed to pay. See *RBF Holding Co. v. Williamson*, supra; *Sherwin-Williams Co. v. Escuadra*, supra at 896.

For purposes of OCGA § 34-9-8 (a), Kaplan was not the employee of either Pulte or Kitchen & Bathworld, because he was an independent contractor-sole proprietor of the subcontractor and not an employee of the subcontractor or even a subcontractor of the principal or general contractor. See OCGA § 34-9-2 (e); *RBF Holding Co. v. Williamson*, supra; *Warner v. Hoar Constr. Co.*, supra at 716. An independent contractor is not entitled to workers' compensation benefits from his principal. *RBF Holding Co. v. Williamson*, supra. As an independent contractor-sole proprietor, Kaplan was not an employee of anyone and not entitled to workers' compensation benefits from anyone else other than himself, since he made the proper election with notice and premium payment. See *Sherwin-Williams Co. v. Escuadra*, supra at 896.

> A principal [and] intermediate [Pulte], or subcontractor [Kitchen & Bathworld] shall be liable for compensation to any employee [(not Kaplan as an independent contractor-sole proprietor)] injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer [(none)].

OCGA § 34-9-8 (a).

As an independent contractor-sole proprietor of the subcontractor, Kaplan does not come within either the facts or law, regarding statutory employer's immunity, because he is neither an independent subcontractor of the principal contractor nor an employee of a subcontractor; Kaplan had no employer. See OCGA § 34-9-8; *Wright Assoc. v. Rieder*, 247 Ga. 496, 498-499 (1) (277 SE2d 41) (1981). See also *Warden v. Hoar Constr. Co.*, supra at 718 (Carley, J., concurring specially).

In dicta unnecessary to the holding, *Sherwin-Williams Co. v. Escuadra*, supra at 896, stated:

> where a subcontractor has obtained workers' compensation coverage for his employees and has properly notified his insurer of his election to be treated as an employee, he should also be treated as an employee for purposes of OCGA § 34-9-8 during the period his election is effective.

In this case, Kaplan was not a subcontractor of Pulte, and his election to protect himself under OCGA § 34-9-2.2 should not be treated as a forfeiture of his common law rights when OCGA § 34-9-11 (a) does not mandate such loss of the right to sue a third party tortfeasor and when OCGA § 34-9-8 affords him no benefits or protection. *Long v. Marvin M. Black Co.*, 250 Ga. 621, 623 (300 SE2d 150) (1983); see *Warden v. Hoar Constr. Co.*, supra at 718-719. If after electing to come under OCGA § 34-9-2.2; after giving proper notice to the insurer and paying the additional premium for his additional coverage; and after the insurer fails or refuses to pay benefits, then, and only then, should OCGA § 34-9-8 come into effect to provide him benefits from the statutory employer, Pulte, as suggested in *Sherwin-Williams Co. v. Escuadra*, supra at 896. However, when there is no quid pro quo through potential liability for workers' compensation payments by Pulte, there is no reason to relieve it of tort liability. *Long v. Marvin M. Black Co.*, supra at 623; see also *Warden v. Hoar Constr. Co.*, supra at 716. Kaplan would lose common law rights without a corresponding benefit merely because he paid for his own workers' compensation benefits as a matter of contract. See generally *Long v. Marvin M. Black Co.*, supra at 623 (employee of the general contractor is not an employee of the "same employer" under the language of the act); *Beers Constr. Co. v. Doyle*, 230 Ga. App. 593, 594 (496 SE2d 921) (1998) (statutory employer limited to the express language of the act and no quid pro quo for immunity).

2. Kaplan contends that the trial court erred in granting summary judgment on the issue of superior knowledge. We agree.

The evidence showed that on December 26, 1995, Pulte ordered the independent contractor, America's Best, to come and use pressure hoses to wash down the garages and driveways of three houses in the immediate area where Kaplan fell, as well as the house on Lot 123 E, where he fell. Black ice formed on the driveway, which caused a dangerous condition. Further, Pulte's employees were in the immediate vicinity doing walk-through inspections and punch list work, and they had to unlock the doors of the house on Lot 123 E before 8:00 a.m. that day for Kaplan. Pulte's practice was to salt and sand any icy driveway.

There was no direct evidence that prior to Kaplan's fall the driveway was hosed down on December 28, 1995, by America's Best. However, the work in the immediate area on that day and the prior two days on other houses created a reasonable inference that work was done or begun on Lot 123 E on that day, prior to Kaplan's fall, because the driveway was covered with a sheet of ice and there had been no rain or snow. An invoice indicated that washing on Lot 123 E was *completed* on December 29, 1995. This gives rise to a reasonable inference favorable to Kaplan that the washing began on December

28 but was completed on the 29th as indicated by the invoice; the invoice did not state that the work began and was completed on the 29th. In fact, Robin Still of America's Best had no actual knowledge of when work was begun or finished on any of the four houses; she testified as to what the records stated was supposed to occur or usually occurred, and not what did occur. All she testified to in her affidavit was what the invoices showed on their face and not when the work was actually done; she gave her opinion and interpretation as to when the work was completed as shown by the strike-through on the work orders. Such records showed that work on Lot 123 E was scheduled to be done on December 26, 1995, and was listed as not completed on December 26 through 28, 1995. The records showed that there were four driveways washed between December 26 and 29, 1995. However, the computer work order indicated that on December 27, 28, and 29, America's Best's employee Terry was scheduled to wash Lot 123 E, which was struck off on the 29th as completed. However, the work sheet dated December 27 showed employee Kendall was assigned the *same* work on Lot 123 E, which was struck off as completed with a notation of December 28. This conflict in the records created a material issue of fact as to when the work was begun and completed for jury determination.

The reasonable inference arose that either Pulte's employees or a subcontractor washed down Lot 123 E at sometime prior to Kaplan's fall, because this house was under Pulte's exclusive control and Pulte ordered such washing be done with knowledge of the consequences in freezing weather. Also, the records gave rise to the inference that the pressure wash was begun by one employee, Kendall, on December 27 and 28 but was either completed or redone by another employee, Terry, on the 29th and that the pressure washing occurred prior to Kaplan's fall. Any other inferences as to when the pressure washing occurred would be a negative inference against Kaplan, the respondent, which the trial court was not permitted to draw. OCGA § 9-11-56 (e). See also *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); *Eiberger v. West*, 247 Ga. 767, 769 (1) (281 SE2d 148) (1981). Further, Michael Thompson, a Pulte employee, testified that he watered the grass of the houses ready to close on occasion but does not remember this date. The trial court erred in failing to give Kaplan such favorable inference.

Under OCGA § 51-3-1, Pulte has a nondelegable duty to keep the premises and approaches safe and was liable for the acts or omissions of its independent contractors in this regard. *Towles v. Cox*, 181 Ga. App. 194, 196 (1) (351 SE2d 718) (1986). Thus, Pulte was vicariously liable for the acts and omissions of America's Best in hosing down the driveway in freezing weather without sanding and salting to prevent the formation of ice, for failing to warn of the presence of

ice, which it knew or should have known would form, and for failure to warn of the dangerous condition. See generally *Feggans v. Kroger Co.*, 223 Ga. App. 47, 50-51 (1) (476 SE2d 822) (1996); *Towles v. Cox*, supra at 196. The knowledge of acts and omissions of America's Best, which was active negligence, is imputed to Pulte as its knowledge as principal. *Bruno's Food Stores v. Taylor*, 228 Ga. App. 439, 442 (1) (491 SE2d 881) (1997).

Further, on December 26, Pulte ordered America's Best to wash down the four driveways for closing in freezing weather, which was dangerous conduct; however, in the exercise of ordinary care Pulte knew or should have known that water freezes below 32°F; that ice would form; that invitees would enter the premises before closing; and that Pulte had not provided for warning signs, salt, or sand to be put out to avoid the danger that it had created. Thus, Pulte had knowledge of what it ordered done, the consequences, and what precautions it did not take. *Bruno's Food Stores v. Taylor*, supra at 443.

There clearly exists a jury issue as to the existence in Pulte of superior knowledge from its actual, constructive, and imputed knowledge of the dangerous condition caused by its acts and omissions. Kaplan testified that he had no knowledge of the black ice.

*Judgment reversed. Barnes, J., concurs. Blackburn, P. J., concurs in judgment only.*

DECIDED JULY 21, 2000.

*Fred J. Rushing, Jr.*, for appellants.
*Wilson, Brock & Irby, Richard W. Wilson, Jr., James S. Teague, Jr.*, for appellees.