A09A2125. ATKINS et al. v. MRP PARK LAKE, L.P. et al.
(687 SE2d 215)

BLACKBURN, Presiding Judge.

In this personal injury action, plaintiffs Sandra Atkins and her husband appeal the summary judgment granted to defendants MRP Park Lake, L.P. and Realty Management Corporation, claiming that disputed issues of fact precluded the grant of summary judgment. We agree with the plaintiffs that the record contains disputed evidence as to key issues in the litigation, and we therefore reverse.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we construe the evidence in favor of the non-movant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So construed, the evidence shows that late on the evening of April 8 through the early morning hours of April 9, 1998, a tornado struck the Park Lake apartments owned by MRP and managed by Realty Management. The tornado caused great damage to the property, including the apartment leased to Atkins and her husband. In addition to being a tenant at the property, Atkins was the on-site business manager employed by Realty Management to manage the property. Because of the damage to Atkins's apartment, she and her husband moved to another apartment in the same building by April 17.

Realty Management assigned one of its employees, Joe Otis, to be the project manager in charge of supervising the clean up, interim repair, and permanent rebuilding of the property. During the first several weeks following the tornado, Otis was constantly walking around the large property to assess damages, to determine what needed to be done, and to supervise the work of the various contractors whom Realty Management had hired to assist in the clean up and repair of the property.

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

On April 21 in the management offices at the property, Atkins informed Otis that the roof over the sunroom in her new apartment was leaking. Otis went and inspected her building, discovering that the temporary tarp placed on the roof of that building had become partially detached and was blowing freely in the wind. Otis arranged to have one of the contractors reattach the tarp; as he was later walking the property, Otis personally saw two workers of Whatley Construction (one of the contractors orally hired to assist in the clean up and immediate repairs) reattach that tarp that same day (April 21).[2]

Unfortunately, the reattached tarp had no holes in it for vent pipes, and thus the tarp covered the vent pipes in the roof. Both defendants' and plaintiffs' witnesses testified that covering such vent pipes with a tarp was a dangerous circumstance, as such would preclude carbon monoxide created by the furnace and hot water heater from escaping and could create a toxic situation for residents in the building. This unfortunate circumstance continued until a maintenance employee of Realty Management noticed the situation on the morning of Friday April 24 and brought it to the attention of Atkins and Otis at the management office. With the assistance of the maintenance employee, Otis immediately went to the building and cut holes in the tarp for the vent pipes.[3]

Atkins began experiencing symptoms of carbon monoxide poisoning on that Friday April 24 (such as lack of concentration, loss of memory, etc.), and, by the next day, not only did a pet bird in her apartment die, but she herself was so lethargic and sick that her off-site supervisor insisted that Atkins stay at the supervisor's residence for the weekend. On Monday, Atkins went to the hospital, where the emergency room physician (and later her treating physician) diagnosed her as having carbon monoxide poisoning based on her symptoms, her history, and the excessive amount of carbon monoxide in her blood as shown in a blood gas test.

Joined by her husband who asserted a loss-of-consortium claim, Atkins in April 2000 sued MRP, Realty Management, Whatley Construction, and others for personal injuries arising from the carbon monoxide poisoning. She specifically asserted claims of negligence in carrying out the owner's duty to properly repair the premises. See OCGA §§ 44-7-13; 44-7-14. In July 2004, the trial

---

[2] Although some evidence showed this re-attachment occurred on April 22 or 23, we construe the evidence in favor of the nonmovant.

[3] Otis claims he did not cut the holes personally but had a subcontractor do so. Once again, we construe the evidence in favor of the nonmovant. Moreover, this discrepancy is for the most part insignificant.

court granted summary judgment to MRP and Realty Management on all claims. The trial court gave three reasons for summary judgment: (i) Whatley Construction (a sole proprietorship with two workers) was an independent contractor for whose negligent actions MRP and Realty Management were not responsible; (ii) the owner's liability for repairs under OCGA §§ 44-7-13 and 44-7-14 could only be for completed repairs — not for negligence occurring during the course of a repair as here; and (iii) Atkins had equal knowledge with MRP and Realty Management as to the vents being covered. This appeal followed.[4]

1. The trial court erred in ruling (i) that Whatley's purported status as an independent contractor exonerated MRP and Realty Management from liability, and (ii) that the evidence undisputedly showed that Whatley Construction was an independent contractor. We hold that MRP and Realty Management could be liable for Whatley's workers' actions *even if* Whatley were an independent contractor, and that the evidence was disputed on this point in any event.

(a) *MRP and Realty Management may be liable for Whatley's actions even if Whatley were an independent contractor.* It is true that an employer generally is not responsible for torts committed by independent contractors. OCGA § 51-2-4. But OCGA § 51-2-5 (4) carves out an exception to this general rule, providing that "[a]n employer is liable for the negligence of a contractor . . . [i]f the wrongful act is the violation of a duty imposed by statute. . . ." See *Johnson v. Kimberly Clark*.[5] Thus, a landowner "cannot insulate itself from liability simply by hiring an independent contractor to" perform the landowner's statutorily-imposed duties, but "may be held liable for the negligence of the independent contractor" in performing such nondelegable duties. (Punctuation omitted.) *Kroger Co. v. Strickland*.[6] Because this particular liability of a landowner "may be predicated on the negligence of others, it is immaterial whether [the landowner] had any knowledge of [the resulting] dangerous condition or was otherwise negligent in its own right." *Carpenter v. Sun Valley Properties*.[7] See *Kroger Co.*, supra, 248 Ga. App. at 615 (1) (b) (store owner's knowledge of resulting hazardous

---

[4] We find it very disturbing that it took five years for the Clerk of the Fulton State Court to prepare and transmit the record to this Court, even though the summary judgment hearing transcript was filed with the Clerk within two months of the notice of appeal. This would hardly seem to comply with the obligations of the Clerk to transmit the record and transcript timely, as set forth in OCGA § 5-6-43. Nevertheless, the Clerk here made no attempt to explain this extraordinary delay in the certificates attached to the record. See OCGA § 5-6-43 (a).

[5] *Johnson v. Kimberly Clark*, 233 Ga. App. 508, 510 (504 SE2d 536) (1998).

[6] *Kroger Co. v. Strickland*, 248 Ga. App. 613, 614-615 (1) (a) (548 SE2d 375) (2001).

[7] *Carpenter v. Sun Valley Properties*, 285 Ga. App. 1, 3 (645 SE2d 35) (2007).

condition irrelevant where liability "was predicated upon the negligence of the independent contractor, which is separate from [the owner's] own liability"). Stated differently, the knowledge of the independent contractor (who directly performed the negligent work and therefore is knowledgeable of such) is legally imputed to the landowner for purposes of liability where the independent contractor is performing nondelegable duties statutorily imposed on the landowner. *Johnson*, supra, 233 Ga. App. at 510. See *Kaplan v. Pulte Home Corp.*[8] ("[t]he knowledge of acts and omissions of [the independent contractor], which was active negligence, is imputed to [the landowner]").

Here, Atkins relies on OCGA §§ 44-7-13 and 44-7-14, which impose on a landowner "a statutory duty to keep the rented premises in good repair" and "impose liability on the landlord for damages resulting from defects in the premises." *Mason v. Gracey.*[9] *Mason* explains this nondelegable statutory duty (cf. OCGA § 44-7-2 (b) (1), (2)) further: "A landlord is liable for damages when the repairs he has a duty to make are completed negligently so that a defect in the premises remains despite the attempted repair." Id. at 153-154 (1) (b). In placing the temporary tarp on the roof, Whatley was performing MRP and Realty Management's duty to repair the premises by stopping the leak into the sunroom until a more permanent repair could be effected. Thus, MRP and Realty Management may be liable for any negligence of Whatley in performing that repair.

Recognizing that Atkins's primary basis for recovery was the landlord's duty to repair set forth in OCGA §§ 44-7-13 and 44-7-14, the trial court incorrectly applied the following caveat set forth in *Mason*: "However, when, as here, the worker hired is an independent contractor, the landlord is not liable for the negligent acts of the worker *during the course of the repairs*." (Emphasis supplied.) Supra, 189 Ga. App. at 154 (1) (b). The trial court concluded that the injury here, which came from the temporary tarp placed over the building's roof to stop immediate leakage, occurred during the course of the permanent repairs to fix the roof, and therefore no liability attached to MRP and Realty Management (based on its holding that Whatley Construction was an independent contractor as a matter of law).

The trial court committed two errors. First, as shown in Division 1 (b) below, some evidence showed that Whatley was not an independent contractor. Second, even if it were an independent contrac-

---

[8] *Kaplan v. Pulte Home Corp.*, 245 Ga. App. 286, 291 (2) (537 SE2d 727) (2000) (physical precedent only).

[9] *Mason v. Gracey*, 189 Ga. App. 150, 153 (1) (b) (375 SE2d 283) (1988).

tor, the injury here did not occur during the course of a repair; rather, the repair which Whatley's workers effected was complete at the time they reattached the tarp over the roof. *That was the extent of the repair, whether temporary or otherwise.* Indeed, Whatley's workers had no further responsibilities as to that repair, and a separate company was later hired to perform the permanent repairs to the roofs at the property, which permanent repairs took over a year to complete. This is completely different from the *Mason* scenario where the independent contractor accidentally started a fire during the course of a repair, for which negligence the owner was not responsible. Id.

Thus, because evidence showed that the temporary tarp repair performed by Whatley's workers was completed so negligently that a defect in the premises (the covering of the vent pipes) was created and remained, the trial court erred in holding that no liability could attach to MRP and Realty Management, *even if* Whatley's workers were independent contractors.

(b) *Some evidence showed the Whatley and its workers were not independent contractors.* The statutory test as to whether a contractor is an independent contractor for liability purposes is set forth in OCGA § 51-2-5 (5), which provides that an employer is liable for the negligence of a contractor "[i]f the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant. . . ." The Supreme Court of Georgia explained further:

> The test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.

(Punctuation omitted.) *Golosh v. Cherokee Cab Co.*[10]

Here, Realty Management orally hired Whatley Construction — a sole proprietorship with two workers — to assist in the temporary clean up and immediate tarping and re-tarping of buildings damaged by the tornado for an hourly rate; Whatley was not hired to complete the permanent repairs at the project. No written or oral contract outlined Whatley Construction's precise responsibilities, setting

---

[10] *Golosh v. Cherokee Cab Co.*, 226 Ga. 636, 637 (176 SE2d 925) (1970).

forth specifications as to the work to be performed, nor did any contract identify a stipulated sum. Told to report to Otis (the experienced Realty Management employee supervising the clean up and repair), Whatley's two workers testified that (i) Otis would instruct them on a daily basis as to what tasks they were to do that day, (ii) he expected them to be at work by no later than 9:00 a.m. each day, and (iii) Otis would regularly give them direction as to the work they were to perform. In performing some of the work, the Whatley workers would use a Bobcat bulldozer not owned or leased by Whatley but available generally on the premises.

But this is not all. As stated further in *Golosh*,

> [w]here one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right to control the manner, method and means of the performance of the contract, and that the employee is not an independent contractor. The test is not whether the employer *did in fact control* and direct the employee in the work, but it is whether the employer had that right under the employment contract.

(Punctuation omitted; emphasis in original.) Supra, 226 Ga. at 638-639. See *Mason*, supra, 189 Ga. App. at 151 (1) (a). In other words, "[i]n the absence of any contractual provision showing that plaintiff did not have the right to direct and control the employees of [the other entity,] we must hold that the evidence has failed to prove as a matter of law that [the other entity] was an independent contractor." *Harrison & Ellis v. Nashville Milling Co.*[11] See *Moon v. Ga. Power Co.*[12] Combined with the evidence of Otis's controlling and directing Whatley's workers, the absence of such a contractual provision here precluded the entry of summary judgment on this issue.

Nevertheless, MRP and Realty Management cite *Mason*, supra, 189 Ga. App. at 151-152 (1) (a), as an example of where an independent contractor relationship was found even though the parties had only an oral contract. However, MRP and Realty Management ignore that in *Mason*, "undisputed testimony established the worker was not employed generally by [the defendant] but was hired pursuant to an oral contract for a certain piece of work

---

[11] *Harrison & Ellis v. Nashville Milling Co.*, 156 Ga. App. 697, 697-698 (1) (275 SE2d 374) (1980).

[12] *Moon v. Ga. Power Co.*, 127 Ga. App. 524, 526-527 (1) (194 SE2d 348) (1972).

according to specifications for a stipulated sum." Id. at 151 (1) (a). We have no such undisputed testimony here. Moreover, in *Mason* the landlord had no expertise in repairs and renovation, unlike Otis of Realty Management who did and who daily supervised the repair work at the project. *Mason* is clearly distinguishable.

The trial court erred in holding that the evidence showed as a matter of law that Whatley Construction was an independent contractor. Although there is certainly some evidence supporting such a proposition, by no means was the evidence undisputed. Summary judgment on this issue was in error.

2. The next ground for summary judgment was the trial court's holding that, as a matter of law, the undisputed facts showed that MRP and Realty Management did *not* have superior knowledge as to the defect (as compared to Atkins), since Atkins was their on-site agent and the property's manager, and therefore MRP's and Realty Management's knowledge could not exceed hers. The fatal flaws to this conclusion are twofold: (i) as stated earlier, knowledge is not a material issue where the active negligence of an independent contractor performing a landowner's statutory duties is alleged (see *Carpenter*, supra, 285 Ga. App. at 3), and even if it were, the knowledge of the independent contractor is imputed to the landlord under such circumstances (see *Johnson*, supra, 233 Ga. App. at 510); and (ii) in any event, the trial court failed to recognize that some evidence showed that *other agents* of MRP and Realty Management did have a knowledge superior to that of Atkins.

Some evidence showed that other agents of MRP and Realty Management had superior knowledge of the defect. Otis, who as an employee of the defendants supervised the emergency repairs and who was constantly walking the property to check on those repairs, should have seen the vent pipe problem, a matter readily conceded by an executive manager of Realty Management. Indeed, that same executive manager testified that she herself should have seen the problem from her visits to the property during this time. When combined with Atkins's testimony that she was personally unaware that the re-attached tarp covered the vent pipes, the evidence certainly was disputed whether Atkins had equal knowledge. The trial court erred in entering summary judgment against Atkins on this basis.

3. Finally, MRP and Realty Management would have this Court affirm summary judgment under the "right for any reason" rule in that they claim the evidence is undisputed that no causal link existed between the negligent tarp repair and Atkins's injuries. This argument fails. The witnesses from all sides of the case almost universally testified that placing a tarp over vent pipes would create the dangerous situation of subjecting residents to carbon monoxide.

YALE LAW LIBRARY

After that very circumstance occurred here for up to three days, Atkins's bird died and Atkins herself began to exhibit symptoms of carbon monoxide poisoning. Upon medical examination and the testing of her blood showing an excessive level of carbon monoxide, the emergency room physician and Atkins's subsequent treating physician both diagnosed her as having experienced carbon monoxide poisoning. One expert hired by plaintiffs similarly testified that Atkins's symptoms were a result of carbon monoxide poisoning, and another testified that the tarp over the vents could well have produced toxic carbon monoxide in Atkins's apartment.

In light of this testimony, we reject MRP and Realty Management's arguments that no evidence linked Atkins's injuries to the negligence in covering the vent pipes. Although MRP and Realty Management can certainly point to contradicting evidence, this simply creates a disputed issue of fact for a jury to decide. The trial court correctly refused to enter summary judgment on this basis, and we decline to do so now.

For these reasons, the trial court erred in granting summary judgment to MRP and Realty Management.

*Judgment reversed. Smith, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 20, 2009.

*Chamberlain, Hrdlicka, White, Williams & Martin, Eric C. White, Nicholas S. Papleacos,* for appellants.

*Hall, Booth, Smith & Slover, Robert L. Shannon, Jr., Mary D. Trammell, Mabry & McClelland, James T. Budd, Thomas G. Tidwell,* for appellees.