## A11A0712. MATHESON v. BRADEN.

(713 SE2d 723)

MILLER, Presiding Judge.

This case involves a vicarious liability action brought by Clyta and Howard Matheson (the "Mathesons") against Mark Braden for injuries the Mathesons received from a vehicle collision caused by Braden's employee, Daoberto Peres.[1] The trial court granted Braden's motion for summary judgment, finding that the direct, positive and uncontradicted testimony showed that at the time of the collision, Peres was driving to his own residence for the purely personal purpose of having lunch, and that therefore, there was no genuine issue of material fact as to whether Peres was acting within the scope of his employment at the time the accident occurred. We agree and find that, as a matter of law, Braden cannot be held vicariously liable for the Mathesons' injuries under the doctrine of respondeat superior.

"Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case." (Citations and punctuation omitted.) *Rubin v. Cello Corp.*, 235 Ga. App. 250, 251 (510 SE2d 541) (1998). On appeal of a grant of summary judgment, we must review the evidence de novo to determine whether the trial court erred in concluding that no genuine issue of material facts remain and that the party was entitled to judgment as a matter of law. Id. at 250.

So viewed, the record reflects that Braden is a farmer/rancher who lives and works on his farm. Braden testified that individuals would often come to his farm looking for work, and that in March 2007, Peres approached Braden's farm for a job. Braden needed assistance on the farm at that time and hired Peres to perform duties, which included driving a tractor, feeding and working with cows, working on fences, and other general tasks. Every day during the first six months of Peres' employment, Peres brought his own food and ate his lunch onsite.

Approximately six months after Peres started working at Braden's farm, Peres informed Braden that the increasing cost of gas was negatively impacting his daily commute to the farm. Given his

---

[1] The complaint filed by the Mathesons named both Braden and Peres as defendants. The record reflects that subsequent to the vehicle collision with the Mathesons, Peres was arrested for failure to yield and driving without a license. The record further reflects that after Braden bailed Peres out of prison, Peres fled the jurisdiction to his home country of Guatemala and failed to appear for his court date. He was not a party to the underlying summary judgment proceedings and is not a party to this appeal.

financial troubles, Peres asked whether he could live in a vacant house that was located in the center of Braden's farm (hereinafter referred to as the "Farmhouse"). Having deemed Peres as "a dependable worker" and "trustworthy," Braden agreed to let Peres live at the Farmhouse. Braden's farm spanned both sides of a four-lane highway, and Braden testified that the Farmhouse is "right there in the center of the farm, and it's always kind of nice to have someone looking after things, making sure, you know, nobody comes up in the middle of the night." Once Peres moved into the Farmhouse, Peres would return there for his lunch break every day.

On the morning of June 12, 2008, the date of the collision, Peres had been working on a part of the farm that was located across the highway from the Farmhouse. Peres' job tasks that day had required him to drive one of Braden's tractors across the highway to the part of the farm on which Peres was working. Braden testified that when it was time for Peres to break for his 30-minute lunch, he decided that he did not want Peres using the tractor to return to the Farmhouse, stating that it "would take another ten minutes or whatever," and that "just tire wear on roads, you just . . . try to avoid that." Accordingly, Braden permitted Peres to use his truck to travel back across the highway to the Farmhouse for lunch.[2] Before Peres reached the Farmhouse, however, he collided with another vehicle driven by the Mathesons.

The Mathesons commenced their personal injury lawsuit against Braden and Peres, contending that Peres was acting as an agent for Braden at the time of the collision. Braden moved for summary judgment, which the trial court granted. In its order, the trial court analyzed Braden's motion under the burden-shifting framework set forth in *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777-778 (257 SE2d 186) (1979) and concluded that the Mathesons were unable to overcome Braden's uncontradicted testimony that Peres was driving the truck to lunch at the time of the collision. The Mathesons now appeal from the trial court's order with respect to the issue of vicarious liability.

The Mathesons argue that there were genuine issues of material fact as to whether Peres was acting within the scope of his employment at the time of the collision. We disagree.

"When a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and

---

[2] Peres had used Braden's truck on previous occasions, but such occasions were limited to the purpose of carrying out certain job tasks and only at Braden's request and with Braden's permission.

on the business of the master." (Citation and punctuation omitted.) *Hicks v. Heard*, 286 Ga. 864, 865 (692 SE2d 360) (2010). "[W]here a tort occurs while an employee has stepped aside from his employer's business to do an act entirely disconnected from that business, the employer has no liability." (Citation omitted.) *Nelson v. Silver Dollar City, Inc.*, 249 Ga. App. 139, 145 (4) (547 SE2d 630) (2001). As such, "Georgia courts have consistently held that where an employee takes a break for lunch and is not otherwise engaged in his employer's business, the employee is on a purely personal mission." *Gassaway v. Precon Corp.*, 280 Ga. App. 351, 353 (634 SE2d 153) (2006). Where a tort occurs as a result of a vehicle collision in which the employee was driving his employer's vehicle, however, the employer's liability must be analyzed pursuant to the burden-shifting framework espoused by the Supreme Court of Georgia in *Allen Kane*.

Under this framework, a presumption arises that the employee was acting in the course and scope of his employment at the time of the collision, and the burden is then on the employer to show otherwise. *Hicks*, supra, 286 Ga. at 865. An employer can overcome this presumption as a matter of law by coming forward with uncontradicted evidence showing that the employee was not acting in the course and scope of his employment. Id.; see also *Farzaneh v. Merit Constr. Co.*, 309 Ga. App. 637, 639 (710 SE2d 839) (2011). The employer is thereafter entitled to summary judgment unless "other facts" are proffered — that is, additional evidence other than the fact that the vehicle was owned by the employer — from which a jury could reasonably infer that the employee was acting within the course and scope of his employment when the accident occurred. *Farzaneh v. Merit Constr. Co.*, supra. Where the "other facts" are direct evidence, such is sufficient for the case to go to the jury. *Allen Kane*, supra, 243 Ga. at 780. Where the "other facts" are circumstantial evidence, however, such evidence will not defeat the employer's motion for summary judgment, unless it is sufficient to support a verdict in the employee's favor. Id.

The trial court's summary judgment order properly applied this burden-shifting analysis to the facts of this case. The fact that Peres was employed by Braden and was driving a vehicle owned by Braden at the time of the collision raised a presumption that Peres was acting in the scope of his employment at the time of the accident. Braden rebutted this presumption by providing uncontradicted testimony that Peres was not acting within the scope of his employment at the time of the collision. The burden then shifted back to the Mathesons to show some "other fact" indicating that Peres was acting within the scope of his employment.

The Mathesons attempted to meet their burden by proffering two "other facts": (i) that "Peres was instructed to use the truck for

specific reasons which provided a benefit to [Braden] (to save time and to avoid wear on the tractor tires)''; and (ii) that "Peres' mere presence at the house was part of his job for [Braden] and that he was traveling from one job function to perform another." The Mathesons characterize these purported "other facts" as direct evidence. We disagree. In support of their contention, the Mathesons cite the following testimony given by Braden:

> We were working . . . across the highway. I have a farm on both sides of the four-lane. I was over at the work site. . . .
>
> And [Peres] brought the tractor over, which has an endloader on it, brought it across the highway over to that side of the farm. At 12:00 o'clock he — we both knew it was lunchtime, and we — I knew he needed — I was already on the side where the house was . . . so I could just walk to lunch.
>
> And at that time I decided it was not — I didn't want him to take the tractor back across, which would take another ten minutes or whatever. I mean, just tire wear on roads, you just to try to avoid that. And he took my truck . . . across . . .
>
> . . . To his house, which is across the highway.

They also point to the additional testimony that Braden provided, that "[Peres] asked if he could live [in the Farmhouse]. And it is right there in the center of the farm, and it's always kind of nice to have someone looking after things, making sure, you know, nobody comes up in the middle of the night."

We believe Braden's deposition testimony speaks for itself insofar as it shows the Mathesons' "other facts" fall short of direct evidence — that is, "if true, [they] prove[ ] a fact without inference or presumption." (Citation and punctuation omitted.) *Hicks*, supra, 286 Ga. at 868. Rather, the "other facts" proffered by the Mathesons consist only of the inferences they themselves drew from Braden's deposition testimony. Thus, the Mathesons' "other facts" are circumstantial evidence. Id. ("Indirect evidence or circumstantial evidence means evidence which only tends to establish the issue by proof of various facts, sustaining by their consistency the hypothesis claimed.") (Citation and punctuation omitted.).

Moreover, not only is the deposition testimony upon which the Mathesons rely circumstantial evidence, but it is also consistent with the direct, uncontradicted testimony that Braden provided. Accord *Allen Kane*, supra, 243 Ga. at 781.

> Circumstantial evidence from which the existence of a fact might be inferred, but which did not demand a finding for the plaintiff to that effect, will not support a verdict when by positive and uncontradicted testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed.

(Citation and punctuation omitted.) Id. Here, the fact that Braden might have expressed a preference for Peres to use Braden's truck rather than the tractor in returning to Peres' Farmhouse residence is not inconsistent with Braden's testimony showing that despite this fact, Peres was on his lunch break and traveling to his residence to eat lunch at the time of the accident in question. Nor is the fact that Peres resided at the Farmhouse or that Braden thought it was "kind of nice to have someone looking after things" inconsistent with Braden's testimony showing that Peres was not acting within the scope of his employment at the time of the collision. Accordingly, the Mathesons' circumstantial evidence does not demand a finding that Peres was acting in the scope of his employment. It in fact constitutes nothing more than "mere inconclusive inference[s]," and as such, the Mathesons' "other facts" are insufficient to survive Braden's motion for summary judgment.

In sum, the trial court properly analyzed and dismissed this case under the *Allen Kane* burden-shifting framework. Any presumption raised by the fact that the employee was driving his employer's vehicle at the time of the collision was overcome as a matter of law through the employer's positive and uncontradicted testimony that the employee was in fact driving to his own residence for the purely personal purpose of having lunch. Because the Mathesons offered no other evidence from which a jury could reasonably infer otherwise, there was no genuine issue of material fact that the employee was acting outside the scope of his employment at the time of the collision.[3] Accordingly, the employer cannot be held vicariously liable as a matter of law, and the trial court's grant of summary judgment to the employer was proper.

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED JULY 6, 2011 — ▮

---

[3] Thus, the Mathesons' alternate grounds for liability under respondeat superior, that Peres was allegedly engaged on a "special mission" for Braden at the time of the collision, must also fail as a matter of law.

*Daniel, Hadden & Alford, Peter T. Alford,* for appellant.
*Jenkins, Olson & Bowen, Frank E. Jenkins III, Robert L. Walker, Magruder & Sumner, J. Clinton Sumner, Jr.,* for appellee.