## A11A2124. BROADNAX v. DANIEL CUSTOM CONSTRUCTION, LLC et al.
### (726 SE2d 770)

MILLER, Judge.

This case involves a vicarious and direct liability action brought by Angela Broadnax against Sebastian Ruiz-Mendoza ("Mendoza"), Randall Flynn Daniel,[1] and Kathy Daniel for injuries Broadnax sustained in a vehicle collision with Mendoza. The Daniels moved for summary judgment on the grounds that they were not vicariously or directly liable for Mendoza's actions. The trial court granted the Daniels' motion, from which Broadnax appeals. Broadnax contends that the trial court erred in finding that Mendoza was acting as an independent contractor, rather than an employee of the Daniels at

---

[1] Mr. Daniel's two construction companies, Daniel Custom Construction, LLC and Georgia Housing Center, Inc., were also named as defendants, but were subsequently dismissed from the case and are not parties to the appeal.

the time of the collision. Alternatively, Broadnax contends that, to the extent the trial court determined that Mendoza was the Daniels' employee, it erred in finding that Mendoza was acting outside the scope of the employment relationship at the time of the collision. For the reasons set forth below, we reverse.

> Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. On appeal of a grant of summary judgment, we must review the evidence de novo to determine whether the trial court erred in concluding that no genuine issue of material facts remain and that the party was entitled to judgment as a matter of law.

(Citation and punctuation omitted.) *Matheson v. Braden*, 310 Ga. App. 585 (713 SE2d 723) (2011).

So viewed, the evidence shows that from February to July 2009, Mendoza worked for Mr. Daniel's two construction companies by performing various jobs that primarily included construction clean-up. Mendoza also worked for the Daniels at their personal residence by performing such duties as mowing and maintaining the Daniels' lawn. On days that Mendoza worked at the Daniels' residence, the Daniels would instruct Mendoza as to what tasks he was to perform on a particular day, as well as the manner in which Mendoza was to complete a requested task. Mendoza generally utilized the Daniels' lawnmower and other equipment when performing yard work at their home. Mendoza testified that to the extent he might have unsatisfactorily performed any of his job duties, Mr. Daniel retained the right to fire him.

Mr. Daniel paid Mendoza on an hourly basis; at the end of each workweek, Mendoza was paid in cash or by a check issued by one of Mr. Daniel's construction companies. As reflected by Mendoza's paychecks, his total weekly compensation included pay for the hours that he performed construction work for Mr. Daniel's two companies, as well as for the hours that Mendoza performed yard work for the Daniels at their personal residence.

According to Mendoza, there was not a set schedule as to what days he would work for the Daniels at their residence and what days he would work for one of Mr. Daniel's companies at a construction site; rather, Mendoza worked wherever and whenever Mr. Daniel needed him. Although Mr. Daniel claimed that Mendoza performed lawn maintenance work according to a time that was convenient for

Mendoza's schedule, Mendoza testified that Mr. Daniel expected Mendoza to work from 9:00 a.m. or 9:30 a.m. to 5:00 p.m. on whatever days he was requested to work.

On July 29, 2009, Mr. Daniel called Mendoza to see whether he was available the next day to mow the Daniels' lawn; Mr. Daniel indicated that he would give Mendoza instructions as to the other tasks he wanted Mendoza to perform at the Daniels' residence. According to Mendoza, Mr. Daniel had also told Mendoza earlier in the week that he wanted Mendoza to wash the windows at the Daniels' residence, and that he was going to find an extension ladder for Mendoza to use for that task. Mr. Daniel denied any discussions with Mendoza regarding washing the windows or acquiring an extension ladder, asserting that he told Mendoza only to mow the lawn on July 30, 2009. Pursuant to Mr. Daniel's usual instructions, Mendoza was expected to be at the Daniels' residence by 9:00 a.m. or 9:30 a.m.

On July 30, 2009, Mendoza traveled in his own vehicle and arrived at the Daniels' residence around 9:00 a.m. Mr. Daniel was not at home when Mendoza arrived, as Mr. Daniel was working at one of his construction sites. According to Mr. Daniel's instructions from the previous day, Mendoza immediately obtained the Daniels' lawn-mower and began to mow their lawn. Mendoza finished his work on the Daniels' lawn before noon. Around that time, Mendoza determined that Mr. Daniel would not be returning home. As such, Mendoza decided to drive his own vehicle to Mr. Daniel's construction site and obtain the ladder to wash the Daniels' windows. Since it was lunchtime, Mendoza had also initially planned to pick up lunch. As he was leaving the Daniels' residence, however, Mrs. Daniel requested that Mendoza plant some flowers upon his return. As a result, Mendoza decided to skip lunch and instead use his time only to find Mr. Daniel and a ladder, so that Mendoza could return to the Daniels' residence and finish his requested tasks for the day. Shortly after leaving the Daniels' residence, Mendoza had a head-on collision with Broadnax.

Broadnax asserted that the Daniels were vicariously liable under the doctrine of respondeat superior for Mendoza's conduct, and that they were directly liable for their negligent entrustment, hiring, retention, supervision, and training of Mendoza. The Daniels moved for summary judgment on the grounds that there was no evidence of any facts upon which the Daniels could be vicariously or directly liable for the allegedly negligent conduct of Mendoza. At the summary judgment hearing, the trial court found that there was no employee-employer relationship between Mendoza and the Daniels, and otherwise, that Mendoza was not acting in the course and scope

of his employment at the time of the collision with Broadnax. As a result, the trial court granted the Daniels' motion for summary judgment.

1. Broadnax contends that the trial court erred in granting summary judgment to the Daniels because there were genuine issues of material fact as to whether Mendoza was an employee or an independent contractor. We agree.

"Although an employer may be held vicariously liable for the torts of an employee, such liability does not extend to torts committed by an independent contractor." (Citations omitted.) *McKee Foods Corp. v. Lawrence*, 310 Ga. App. 122, 124 (712 SE2d 79) (2011); see OCGA § 51-2-4 ("An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and . . . is not subject to the immediate direction and control of the employer."). However, there are exceptions to this general rule. Notably, OCGA § 51-2-5 (5) provides that "[a]n employer is liable for the negligence of a contractor . . . [i]f the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference[.]"

> The test for determining whether an employer is exercising a degree of control over an independent contractor's work such that the law will deem the independent contractor to be a servant of that employer — thus making the employer vicariously liable for any wrongful acts committed by the contractor — is whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right to merely require certain definite results in conformity with the contract. Put another way, the test is essentially whether the contractor has a bona fide existence apart from the employer or functions instead as the employer's alter ego.

(Punctuation and footnotes omitted.) *Ga. Messenger Svc., Inc. v. Bradley*, 311 Ga. App. 148, 150 (1) (715 SE2d 699) (2011).

Here, there was a genuine issue of material fact as to whether the degree of control exercised by the Daniels over Mendoza's lawn maintenance work was such that the Daniels may be held liable for Mendoza's alleged negligence against Broadnax. Notwithstanding the Daniels' claim that they did not control the time, manner, or method of Mendoza's work, the evidence viewed in the light most

favorable to Broadnax, as the non-moving party, shows at least a question of fact otherwise. Significantly, Mendoza maintained that (i) he was to perform work at the Daniels' personal residence whenever and wherever it was requested; (ii) when work was available, Mr. Daniel expected Mendoza to work from 9:00 a.m. or 9:30 a.m. to 5:00 p.m.; (iii) the specific tasks performed by Mendoza depended on what the Daniels had instructed him to do that day; (iv) Mr. Daniel would instruct and describe the manner in which Mendoza was to perform specific tasks; (v) Mendoza utilized the Daniels' equipment to perform his work at the Daniels' residence; (vi) Mr. Daniel paid Mendoza weekly by cash or check; and (vii) Mr. Daniel had the authority to fire Mendoza.[2] Cf. *Boatright v. Old Dominion Ins. Co.*, 304 Ga. App. 119, 121 (1) (695 SE2d 408) (2010) (holding that evidence demonstrated worker was an employee rather than independent contractor for purposes of insurance policy exclusion where employer (i) hired worker to assist in building houses; (ii) paid him weekly by check; (iii) provided worker with necessary tools and materials; (iv) instructed the worker to perform the work requested by employer and in the manner desired by employer; and (v) retained the authority to discharge worker); *Atkins v. MRP Park Lake, L.P.*, 301 Ga. App. 275, 280 (1) (b) (687 SE2d 215) (2009) (holding that evidence was sufficient to preclude summary judgment on independent contractor issue where (i) the employer instructed workers on a daily basis as to what tasks they were to do that day; (ii) the employer expected them to be at work by no later than 9:00 a.m. each day; (iii) the employer would regularly give the workers direction as to the work they were to perform; and (iv) in performing some of the work, the workers would use equipment that was available generally on the premises, rather then their own equipment).

Furthermore, the Daniels did not point to any written or oral contract providing that they did not have the right to direct or control Mendoza's work.

> Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right

---

[2] Despite Mendoza's testimony that he believed he was working only for Mr. Daniel, this evidence also creates a question of fact as to whether Mrs. Daniel, like Mr. Daniel, retained the right to control and direct Mendoza. Moreover, there was evidence further showing that Mrs. Daniel signed Mendoza's paychecks, occasionally described Mendoza's daily job tasks while he was working at the Daniels' residence, and specifically requested that flowers be planted while Mendoza was working at the residence on July 30, 2009.

to control the manner, method and means of the performance of the contract, and that the employee is not an independent contractor. . . .

In other words, in the absence of any contractual provision showing that [an employer] did not have the right to direct and control the employees . . . , we must hold that the evidence has failed to prove as a matter of law that the [employees] [were] independent contractor[s].

(Citations and punctuation omitted.) *Atkins*, supra, 301 Ga. App. at 280 (1) (b). Given the absence of any such contract in this case, combined with the evidence that the Daniels retained at least some right to control and direct Mendoza, there was a question of fact precluding the entry of summary judgment on the issue of the employment relationship between Mendoza and the Daniels. The trial court erred in finding otherwise.

2. Broadnax further contends that the trial court erred in granting summary judgment to the Daniels because there were genuine issues of material fact as to whether Mendoza was acting in the course and scope of his employment at the time of the collision. Again, we agree.

Under Georgia law, two elements must be present to render a master liable for his servant's actions under respondeat superior: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business. If a tort is committed by an employee for reasons unrelated to that employment (e.g., for purely personal reasons disconnected from the authorized business of the master), the employer is not liable. Summary judgment for the master, then, is appropriate when the evidence shows that the servant was not engaged in furtherance of his master's business but was on a private enterprise of his own. Finally, the question of whether the servant at the time of an injury to another was acting in the prosecution of his master's business and in the scope of his employment is for determination by the jury, except in plain and indisputable cases.

(Punctuation and footnotes omitted.) *Ga. Messenger Svc., Inc.*, supra, 311 Ga. App. at 151 (2).

Here, we conclude that a genuine issue of material fact remained as to whether, at the time of the collision with Broadnax, Mendoza

was acting in furtherance of the Daniels' business and within the scope of the same. According to Mendoza, a day or two prior to July 30, 2009, Mr. Daniel had indicated that he was going to provide Mendoza with an extension ladder so that Mendoza could clean the Daniels' windows after he mowed their lawn on July 30, 2009. Upon completing his work on the Daniels' lawn that morning, however, Mendoza determined that Mr. Daniel was not coming back to the residence with a ladder. Mendoza thus decided to drive from the Daniels' residence to obtain the ladder so that he could complete the requested task of washing the Daniels' windows. Notwithstanding the Daniels' argument that Mendoza was neither directed nor requested to clean the Daniels' windows, get into his vehicle, and otherwise find a ladder from Mr. Daniel that day,

> [w]hether a specific act was authorized has never been the test of liability. In fact, it makes no difference that the master did not authorize a particular act, or even know of the servant's act or neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment.

(Citation and punctuation omitted.) *Brown v. AMF Bowling Centers, Inc.*, 236 Ga. App. 277, 278 (511 SE2d 619) (1999).

Finally, we note that "where an employee takes a break for lunch and is not otherwise engaged in his employer's business, the employee is on a purely personal mission." *Nelson v. Silver Dollar City, Inc.*, 249 Ga. App. 139, 145 (4) (547 SE2d 630) (2001). Here, however, the evidence created a question of fact as to whether Mendoza, at the time of the collision, was on the "purely personal mission" of lunch or was "otherwise engaged in his employer's business" by attempting to locate Mr. Daniel and obtain a ladder. Notably, although Mendoza indicated that he had initially planned to pick up lunch after leaving the Daniels' residence, Mendoza specifically testified that he decided to skip lunch after Mrs. Daniel asked him to plant some flowers upon his return to the Daniels' residence. Thus, according to Mendoza, at the time of the collision, he was solely on the mission of finding Mr. Daniel and an extension ladder so that he could complete the task of washing the Daniels' windows, as Mr. Daniel had requested of Mendoza earlier in the week.

For all of the foregoing reasons, we reverse the trial court's grant of the Daniels' motion for summary judgment.

*Judgment reversed. Ellington, C. J., and Doyle, P. J., concur.*

DECIDED MARCH 29, 2012.

*Bell & Brigham, John C. Bell, Jr., Turkheimer & Hadden, John D. Hadden, Benjamin F. Windham,* for appellant.

*Blasingame, Burch, Garrard & Ashley, M. Steven Heath, Matthew A. Moseley, James Bates, William P. Horkan, Lee M. Gillis, Jr., Charles W. Rutter,* for appellees.