A94A2256. YOW v. FEDERAL PAPER BOARD COMPANY, INC.
(455 SE2d 372)

ANDREWS, Judge.

Yow appeals from the grant of summary judgment to Federal Paper Board Company, Inc. (Federal) in her suit for damages resulting from her husband's death and her injury in a wreck with a tractor-trailer used to haul cut timber to Federal's mill.

1. "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cit.] A *defendant* may do this by showing the court that the

documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. [Cit.] A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

So viewing the facts on summary judgment in favor of Yow, *Eiberger v. West*, 247 Ga. 767, 769 (1) (281 SE2d 148) (1981), the evidence was that the accident occurred on May 18, 1992 as Carter, the driver of the tractor-trailer which was owned by Adams, was backing the rig, loaded with logs, into the driveway next to his home around 11:30 p.m. The logs had been cut from the Bailey tract owned by Wachovia Bank. Wachovia had sold the standing timber to Federal which operated several sawmills and paper mills. The forestry consultant for Wachovia had marked the trees to be cut with orange paint.

Federal used various loggers to cut and haul the logs used in its operations. Timber to be cut was designated by tract and one logger, individual or company, was contracted for each tract. On April 9, 1992, Federal and "Eddie Loudermilk F.C.L."[1] entered into a "Harvest and Delivery Agreement" in which Loudermilk agreed to "cut all trees marked with orange paint" on the First Wachovia-Bailey Tract and deliver them to the specified mill. Which logs were delivered to which mill was determined by size specifications provided by Federal and made part of all such contracts.

Adams owned two logging rigs. He operated one for Loudermilk and generally hired Green to drive the other one for Loudermilk. Green, however, had failed to obtain a commercial driver's license as required by April 1992. He knew Carter and solicited Carter to fill in with Adams, which Carter did. Carter was paid by the "loaded miles" on logs delivered to the mill and he was given his check by Loudermilk, who then deducted the amount of Carter's payment from the check he gave to Adams.

On the day of the accident, Carter had gotten to the Bailey Tract

---

[1] Loudermilk had established a corporation, Freeman Creek Logging, Inc., as his logging company. That corporation, however, was dissolved by the Secretary of State on January 9, 1992 for failure to file its annual registration. Therefore, for purposes of this opinion, we treat Loudermilk as an individual doing business as Freeman Creek Logging.

late, around 11:00 a.m., having driven the rig there directly from his home. He had delivered one load to the Washington mill and returned to the site where a second was loaded. The mills maintained regular hours, designated according to when the sun rose and set, for delivery to the mill. The loads were visually checked on arrival at the mill for contract compliance and this could not be done after dark. Deliveries were accepted in May until 6:00 p.m.

Carter's second load was not on the rig until 6:00 p.m. and, as was his practice, he decided to take the rig home and deliver the load the next day. His home was located a two-and-one-half hour drive from the tract and he started home. He stopped several times to go to a convenience store and to talk to people he knew, arriving home around 11:00 p.m. He had his rig across the two-lane road lined up with his driveway and had begun to back it in when Mr. Yow came around a curve several hundred feet away and broadsided the trailer. The trailer had three lights on each side and Carter was driving with his lights on. Additionally, he had turned on his flashers prior to beginning the maneuver. Carter was of the opinion that Yow was traveling more than 45 mph. The speed limit in front of Carter's home was 25 mph.

Yow sued Federal,[2] contending that it was responsible for Carter's actions under respondeat superior.

2. "The general rule of respondeat superior follows: When a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master. [Cits.] 'Where a vehicle is involved in a collision, and it is shown that the automobile is owned by a person, and that the operator of the vehicle is in the employment of that person, a presumption arises that the employee was in the scope of his employment at the time of the collision, and *the burden is then on the defendant employer to show otherwise.*' [Cits.] *This must be done by clear, positive and uncontradicted evidence.* [Cit.]" (Emphasis supplied.) *Allen Kane's Major Dodge v. Barnes,* 243 Ga. 776, 777 (257 SE2d 186) (1979).

"The true test whether a person employed is a servant or an independent contractor is whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work, as contradistinguished from the right to insist upon the contractor producing results according to the contract, or whether the contractor in the

---

[2] Loudermilk and Freeman Creek were originally named as defendants, along with Carter and Adams, but the complaint was voluntarily dismissed as to Loudermilk and Freeman Creek.

performance of the work contracted for is free from any control by the employer of the time, manner, and method in the performance of the work." (Citations and punctuation omitted.) *Withrow Timber Co. v. Blackburn*, 244 Ga. 549, 550 (261 SE2d 361) (1979).

Like *Withrow*, a case involving a logging truck, the present case shows only the mere possibility of a control situation. The fact that Federal, owner of the standing timber, inspects operations to ensure the right timber is being cut in accordance with the specifications and that, while loaded rigs were on the premises of Federal, they were subject to direction while Federal employees unloaded the logs and to safety standards of the mill does not evidence the necessary control. Id.

This case is also factually similar to and controlled by *Slater v. Canal Wood Corp. of Augusta*, 178 Ga. App. 877, 878 (1) (345 SE2d 71) (1986). There, Slater's husband was killed by a collision with a log truck owned and operated by Jackson who had a "cut and haul" contract with Canal Wood. Canal Wood was a broker which purchased timber from sellers for resale to wood processors. Canal Wood hired various independents such as Jackson to cut, haul, and deliver the wood. That contract, as the present one, identified the hauler as an independent contractor. Slater presented the following facts to support its claim that Jackson was an employee: Canal Wood retained the right to inspect the tract where the cutting was occurring, required Jackson to carry certain types of insurance and to comply with applicable state and federal laws, reserved the right to make suggestions and recommendations concerning the work, and required the work to be done according to industry standards. The court there properly concluded that these facts were unavailing.

Similarly, the facts put forward by Yow cannot overcome the affirmative showing made by Federal regarding Carter.

3. Finally, even giving Yow benefit of all possible inferences and assuming that Carter could be said to be an employee of Federal, which was vigorously contested, Federal was still entitled to summary judgment.

Having missed closing time at Federal's mill, Carter, with the permission of Adams, the rig's owner, drove the rig away from the mill for over two-and-one-half hours to reach his home where he arrived after 11:00 p.m.

" 'To hold a master liable for a tort committed by his servant, it must appear that *at the time of the injury* the servant was engaged in the master's business and not upon some private and personal matter of his own; that is, the injury must have been inflicted in the course of the servant's employment. *The test is not that the act of the servant was done during the existence of the employment, but whether the servant was at that time serving the master.*' (Citations and punctua-

tion omitted.) *Curtis, Inc. v. Kelley,* 167 Ga. App. 118, 119 (305 SE2d 828) (1983)." *Schofield v. Cox Enterprises,* 212 Ga. App. 354, 355 (441 SE2d 693) (1994).

Here, there is insufficient evidence of either a direct or circumstantial nature to contradict Carter's statement that he was driving his work vehicle home for the purpose of getting home, nothing more. *Braddy v. Collins Plumbing &c.,* 204 Ga. App. 862, 864 (420 SE2d 806) (1992).

Therefore, the grant of summary judgment to Federal was proper on the grounds set out above and the remaining arguments put forward by appellant need not be addressed.

*Judgment affirmed. Johnson, J., concurs. Beasley, C. J., concurs in the judgment only.*

DECIDED MARCH 15, 1995 — ▮▮▮▮▮▮▮▮▮▮

*Webb, Carlock, Copeland, Semler & Stair, Wade K. Copeland, N. Beth Dorsey,* for appellant.

*Long, Weinberg, Ansley & Wheeler, Arnold E. Gardner, Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., Lisa S. Siegel,* for appellee.