ELLINGTON, Judge.
 

 These cases arose when a tractor-trailer driven by Johnny Moody struck a pickup truck driven by Jimmy McLaine, which forced McLaine's truck into a tractor being driven by Bradford Register. The collisions resulted in the deaths of McLaine, his five-year-old daughter, May Angelyne ("Macy"), and Register's two-year-old son, Brance. Register and his five-year-old son, Brennen, were critically injured. The injured individuals, as well as the families of the deceased and injured (hereinafter, collectively referred to as "the plaintiffs"), filed wrongful death and personal injury
 

 **336
 

 claims
 
 [1]
 
 against Peggy and John McLeod, d/b/a Container South Export & Import Service (hereinafter, "Container South") and other defendants. The plaintiffs contended that Container South was serving as a motor carrier and the de facto employer of the tractor-trailer driver, Johnny Moody, at the time of the collision and, therefore, Container South was vicariously liable for Moody's negligence.
 
 [2]
 
 They also asserted that Container South was directly liable for negligently hiring Moody. Container South filed a motion for summary judgment, contending that Moody and his employer, Kight Trucking, were independent contractors, that Container South did not negligently retain Moody, and that Moody was on a personal mission at the time of the collision. The trial court granted the motion after concluding that the evidence of Container South's limited involvement in directing how its goods were shipped was insufficient as a matter of law to impose vicarious liability on Container South for Moody's negligence.
 
 [3]
 
 The plaintiffs appeal, contending the court erred in granting summary judgment because material issues of fact remain as to whether Container South was liable for
 
 *698
 
 Moody's negligence. The cases were consolidated on appeal. For the following reasons, we find no error and affirm.
 

 In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary
 

 **337
 

 judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.
 

 (Citations omitted.)
 
 Benton v. Benton,
 

 280 Ga. 468
 
 , 470,
 
 629 S.E.2d 204
 
 (2006). So viewed, the record shows the following facts.
 

 Kight Trucking Company provided tractor-trailers and drivers to ship products for cargo brokers. Kight Trucking owned, insured and maintained the trucks its drivers used to transport cargo. Kight Trucking's name and its United States Department of Transportation ("U.S.DOT") number was printed on the side of the trucks.
 

 Container South is a cargo property broker which arranges for the shipment of agricultural goods of third parties to various ports by brokering the loads with approximately 40 different carriers. Container South has contracts with each of the carriers which provide that each carrier is responsible for its own drivers and equipment, is required to provide competent tractor-trailer drivers, is required to maintain liability insurance, and is solely responsible for the drivers' salaries, workers' compensation coverage, and taxes. Container South does not own any of the equipment used by the various carriers to transport cargo. According to Peggy McLeod, owner of Container South, when her company receives an order for a pickup or delivery of cargo, she arranges for one of the carriers to send a tractor-trailer to transport the goods. The carriers are free to accept or reject shipping assignments, and, if a carrier rejects an assignment, McLeod simply arranges for a different carrier to transport the cargo.
 

 In December 2002, Kight Trucking and Container South entered into a contract which stated that Container South was a cargo broker, Kight Trucking was a carrier and an independent contractor, and that Kight Trucking warranted that its drivers were competent and properly licensed to transport cargo. In an affidavit, McLeod described the parties' working arrangement, as follows:
 

 If Kight accepted [a shipping] assignment, Container South informed Kight or the driver (if known) only that the shipment was to be picked up at a certain place and delivered to its destination. Pickup and destination times and places were decided by the shipper, not Container South, and Container South had no control over such times and places. Container South did not tell Kight which of Kight's drivers or trucks to use, what routes to take, how to load or unload [the cargo], how to drive, or give any other
 

 **338
 

 direction or order. Container South had no power or right to hire, fire, discipline or oversee any of Kight's drivers, including Johnny Moody. Container South required only that Kight pick up and deliver at the shipper's designated times and places.
 

 Container South used Kight Trucking's tractor-trailers and drivers to carry loads for almost a year without any reports of problems.
 

 In November 2003, Kight Trucking hired Moody as a tractor-trailer driver. At the time, Moody had a Florida commercial driver's license; he also had four convictions for driving under the influence. For two months, Kight Trucking had Moody transport cargo for Container South. Normally, Moody called Container South each morning and talked to McLeod, who told him when and where to pick up and deliver cargo that day. According to McLeod, however, Container South did not tell Moody what routes to take, did not provide any equipment to Moody, or otherwise exercise any control or input over the time, method and manner of Moody's work and driving.
 

 *699
 
 On January 13, 2004, Moody drove to Florida to pick up a load of peanuts on behalf of Container South. Peggy McLeod found out that the load was not ready to be picked up, however, so she asked Moody to drive instead to Ashburn, Georgia, to pick up a different load the next morning. Instead of driving directly to Ashburn, Moody went to his home in Denton, Georgia, so that he could see his family for a couple of hours.
 

 According to Moody, he had started drinking alcohol at 9:00 a.m. that day. As Moody drove toward his home at approximately 5:55 p.m., he was legally intoxicated and speeding when he hit the back of the pickup truck being driven by Jimmy McLaine. The impact of the collision caused the pickup truck to collide with a tractor being driven by Bradford Register. The pickup truck caught fire, and Jimmy McLaine and his daughter, Macy, were killed. In addition, Bradford Register's two sons, Brance and Brennen, were passengers in the pickup truck. Brennen was critically injured in the collision, and Brance was killed. Bradford Register was also critically injured. Moody fled the scene of the collision on foot, but was apprehended and arrested a few hours later.
 

 1. The plaintiffs contend that the trial court erred in granting summary judgment to Container South. They argue that material issues of fact exist as to whether Container South was acting as Moody's employer at the time of the collision and, therefore, was vicariously liable for Moody's negligence. We disagree.
 

 OCGA § 51-2-4 provides that "[a]n employer generally is not responsible for torts committed by his employee when the employee
 

 **339
 

 exercises an independent business and in it is not subject to the immediate direction and control of the employer."
 
 [4]
 

 In determining whether the relationship of parties under a contract for performance of labor is that of employer and servant or that of employer and independent contractor, the chief test lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract. Where the contract of employment clearly denominates the other party as an independent contractor, that [description of the] relationship is presumed to be true unless the evidence shows that the employer assumed such control. On the other hand, where the contract specifies that the employee's status shall be that of independent contractor but at the same time provides that he shall be subject to any rules or policies of the employer which may be adopted in the future, no such presumption arises.
 

 (Citations and punctuation omitted.)
 
 Ross v. Ninety-Two West, Ltd.,
 

 201 Ga.App. 887
 
 , 891-892(3),
 
 412 S.E.2d 876
 
 (1991). See also
 
 Davis v. Beasley Timber Co.,
 

 241 Ga.App. 706
 
 , 707-708(1),
 
 527 S.E.2d 221
 
 (2000) (accord). Further, in order to impose liability on a defendant under OCGA § 51-2-4,
 

 the employer must have retained at least some degree of control over the manner in which the work was done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, as to operative details. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.
 

 (Citations and punctuation omitted.)
 
 Slater v. Canal Wood Corp. of Augusta,
 

 178 Ga. App. 877
 
 , 880(1),
 
 345 S.E.2d 71
 
 (1986).
 

 **340
 

 As shown above, Container South's contract with Kight Trucking specifically stated that Kight Trucking was an independent contractor which warranted that its drivers were competent and properly licensed. Kight Trucking hired Moody, paid
 
 *700
 
 his salary, owned the tractor-trailer that Moody drove, and provided maintenance and insurance for the tractor-trailer. Moody never applied for employment with Container South, and, in fact, Peggy McLeod had never met either Johnny Kight, owner of Kight Trucking, or Moody prior to the collision. There is no evidence that Container South ever requested that Kight Trucking provide Moody as its driver. Container South had no authority to discipline or fire Moody. Although Container South told Moody where and when to pick up and deliver cargo, the specific places and times were set by the shippers, not by Container South. Container South never told Moody how to drive the tractor-trailer or which routes to take from one point to another. Container South did not own or lease the tractor-trailer or any of the equipment used by Moody, nor did it provide any insurance for Moody or the tractor-trailer.
 

 By presenting this evidence, Container South "successfully pierced the allegations in the complaint of liability under the doctrine of respondeat superior, and [the] plaintiff[s] [were] thus required to respond by setting forth a specific fact or facts showing a genuine issue for trial." (Citation omitted.)
 
 Slater v. Canal Wood Corp.,
 

 178 Ga.App. at 879
 
 (1),
 
 345 S.E.2d 71
 
 . In support of their claim that Moody was an employee of Container South, the plaintiffs rely on Moody's deposition statements that McLeod told him when and where to pick up cargo and that, on the day of the collision, he was "driving for" Container South. "It has long been the law of this state [, however,] that the out-of-court declarations of a purported agent do not, without more, prove the existence of an agency relationship."
 
 Southern Tax Consultants v. Scott,
 

 267 Ga. 347
 
 ,
 
 478 S.E.2d 126
 
 (1996). The plaintiffs also rely on evidence that Moody used a shipping number and "buck slip" provided by Container South to access a port in Charleston, South Carolina. The record shows, however, that a third party (the shipper) provided the number and slip to Container South and that Container South then provided them to Moody, who happened to be the driver assigned to that specific cargo load that day, so he could pick up the cargo. Further, the plaintiffs' contention that Container South could only provide a shipping number if it was the carrier for the cargo (and, therefore, Moody's de facto employer) is not supported by the record.
 

 Thus, the contract between Container South and Kight Trucking provided that Kight Trucking was an independent contractor, and the evidence shows that Container South's role was limited to telling Moody when and where to pick up and deliver cargo. The
 

 **341
 

 evidence also shows that Container South merely retained the right to require results in conformity with the contract and that Moody and Kight Trucking retained the right to perform the work by their own means, method and manner. In contrast, the evidence relied upon by the plaintiffs fails to show that Container South had retained such control over Moody or to rebut the presumption that Kight Trucking and its employee, Moody, were independent contractors at the time of the collision.
 
 Larmon v. CCR Enterprises,
 

 285 Ga.App. 594
 
 , 595-596,
 
 647 S.E.2d 306
 
 (2007);
 
 Slater v. Canal Wood Corp. of Augusta,
 

 178 Ga.App. at 880
 
 (1),
 
 345 S.E.2d 71
 
 ; see
 
 Jacobs v. Thomson Oak Flooring,
 

 250 Ga.App. 56
 
 , 58(1),
 
 550 S.E.2d 465
 
 (2001) ("where there is a specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the right of control was not retained and an independent contractor relation existed") (citation omitted). In fact, the degree of control exercised by Container South in this case is far less than in other cases in which this Court has found that an independent contractor relationship existed and, consequently, that the defendants were not vicariously liable for the contractor's negligence.
 
 [5]
 

 *701
 
 Therefore, we conclude that the court did not err in granting summary judgment to Container South on this claim.
 

 2. The plaintiffs also contend that, even if Container South was not Moody's employer but was acting as a broker at the time of the collision, the company could still be liable for Moody's negligence because it negligently hired Moody as a driver and failed to investigate his driving record prior to dispatching him on the day of the collision. Although the plaintiffs contend that Moody's incompetence as a driver was "obvious[ ]," it is undisputed that Moody drove tractor-trailers for two months for Kight Trucking without incident. Also, in its contract with Container South, Kight Trucking warranted that its drivers were competent and properly licensed. Further,
 

 **342
 

 the plaintiffs have cited to no authority that would have allowed Container South, who was neither Moody's employer nor potential employer,
 
 [6]
 
 to have access to Moody's driving records.
 
 [7]
 
 Accordingly, the plaintiffs' claim that Container South negligently hired Moody must fail.
 
 Slater v. Canal Wood Corp.,
 

 178 Ga.App. at 882
 
 (2),
 
 345 S.E.2d 71
 
 .
 

 3. To the extent the plaintiffs argue that Container South should be liable for negligently hiring Kight Trucking as an independent contractor because the act of driving a tractor-trailer is inherently dangerous, they have failed to cite to any Georgia authority to support their proposition, and we decline to adopt such a rule in this case. See
 
 Jacobs v. Thomson Oak Flooring,
 

 250 Ga.App. at 60-61
 
 (4),
 
 550 S.E.2d 465
 
 (declining to find that the act of hauling logging equipment is an inherently dangerous activity). Moreover, it is undisputed that Kight Trucking provided tractor-trailers and drivers for Container South for over a year without any problems, and, in May 2003, the U.S. Department of Transportation performed a safety audit of Kight Trucking and determined that it met the government's safety fitness standards. Accordingly, even if Container South
 
 could
 
 be held liable for negligently hiring Kight Trucking, there is no evidence in the record to support a finding that Container South should have known that Kight Trucking had hired an incompetent or unsafe driver. Absent such knowledge, the plaintiffs' negligent hiring claim must fail.
 
 Slater v. Canal Wood Corp.,
 

 178 Ga.App. at 882
 
 (2),
 
 345 S.E.2d 71
 
 .
 

 Judgment affirmed.
 

 BLACKBURN, P.J., and MILLER, J., concur.
 

 Case No. A08A0422 arose from Kaylynn McLaine's wrongful death suit, which she brought individually and as the administratrix of the estate of her daughter, May Angelyne McLaine. Case No. A08A0424 arose from Mrs. McLaine's wrongful death suit, which she brought individually and as the administratrix of the estate of her husband, Jimmy Powell McLaine, Jr. Case No. A08A0423 arose from the wrongful death suit brought by Bradford and Lori Register, parents of Brance Register, which they brought individually and as co-administrators of the estate of Brance Register. Case No. A08A0427 arose from the personal injury suit brought by the Registers individually and as next friends of their minor son, Brennen Register. Case No. A08A0426 arose from Bradford Register's personal injury suit, which was based upon his own injuries. Case No. A08A0425 arose from a suit filed by Lori Register for damages resulting from the injuries to her husband and children.
 

 It is undisputed on appeal that Moody's negligence caused the collision and the resulting injuries to the plaintiffs. There is no allegation or evidence that any part of the tractor-trailer, which was not carrying cargo at the time of the collision, malfunctioned or otherwise caused or contributed to the collision or the victims' injuries. Moody is currently serving a prison sentence for his role in the vehicular homicides. Before filing suit against Container South, the plaintiffs settled with Moody and his employer, Kight Trucking Company.
 

 The court also denied the plaintiffs' motion for reconsideration, noting that it had considered and rejected the plaintiffs' alternative theory of negligent hiring. According to the court, because Moody was not an employee of Container South, Container South could not have negligently hired him as a matter of law.
 

 Cf. OCGA § 51-2-5 (exceptions to the rule that an employer is generally not liable for an independent contractor's negligence). None of the OCGA § 51-2-5 exceptions are applicable to the facts of this case.
 

 See, e.g.,
 
 Jacobs v. Thomson Oak Flooring,
 

 250 Ga.App. at 58-59
 
 (1),
 
 550 S.E.2d 465
 
 (no employer/employee relationship existed as a matter of law despite the fact that the defendant designated which tracts the contractor was to cut, told him where to haul it, and periodically visited the work site to ensure the cutting was being done properly);
 
 Yow v. Fed. Paper Bd. Co.,
 

 216 Ga. App. 652
 
 , 655,
 
 455 S.E.2d 372
 
 (1995) (physical precedent only) (no employer/employee relationship existed as a matter of law despite the fact that the defendant retained the right to inspect the tract where the cutting was being done and required the work to be done according to industry standards);
 
 Slater v. Canal Wood Corp. of Augusta,
 

 178 Ga.App. at 880-882
 
 (1),
 
 345 S.E.2d 71
 
 (no employer/employee relationship existed as a matter of law despite the fact that the defendant retained the right to inspect the contractor's work to ensure that he was complying with the contract and to ensure that the contractor adhered to industry standards, and required the contractor to carry certain types of insurance); cf.
 
 Davis v. Beasley Timber Co.,
 

 241 Ga.App. at 708
 
 (1),
 
 527 S.E.2d 221
 
 (a jury issue existed on whether the negligent truck driver was an employee of the timber company when the company owned and maintained the trailer the driver was using, told him when to report for work to pick up a load of timber, gave him a handbook on company policy, and explained the company's "Do's and Don'ts").
 

 See Division 1, supra.
 

 See, e.g.,
 
 49 CFR, § 391.23
 
 (k)(2) (providing that a prospective motor carrier employer must use information about a driver's previous accidents and his history of drug and alcohol abuse only as part of deciding whether to hire the driver, and "must take all precautions reasonably necessary to protect the records from disclosure to any person not directly involved in deciding whether to hire the driver").