**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 6, 2013**

# In the Court of Appeals of Georgia

A13A0827. WADE v. ALLSTATE FIRE AND CASUALTY
    COMPANY.

MILLER, Judge.

This appeal arises from the grant of summary judgment to Allstate Fire and

Casualty Company ("Allstate") regarding an attempt by its insured, Bernard Wade,

to collect underinsured motorist ("UM") benefits following a multi-vehicle accident.

Allstate moved for summary judgment on the basis that

Wade did not exhaust the limits of the insurance coverage for all defendants, which

Allstate argued was required by the UM provision in his insurance policy. We

conclude that questions of fact remain as to whether Wade would be entitled to UM

benefits in this case because it is unclear whether Wade has additional losses that

have not been paid by a tortfeasor, whose liability limits have been exhausted. In

particular, there has not been a full determination as to the extent of Wade's damages and there has been no apportionment of fault as required by law. Therefore, questions remain as to whether Wade is entitled to UM benefits for uncovered losses. Accordingly, we reverse and remand.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

The undisputed facts of the record show that Bernard Wade was injured when he was involved in a multi-vehicle accident. Wade filed suit against the other drivers involved in the accident – Fred Bergh, Dale Froman, and James Bruce – alleging that their negligence caused his injuries. Wade also sued Froman's employer (Triton Sprinkler Company, Inc.) under the theory of respondeat superior and Kathy Bruce, James's mother, under the family purpose doctrine. Wade also served his insurer, Allstate, with a copy of his suit. At the time of the accident, Wade carried a motor vehicle insurance policy issued by Allstate, which provides uninsured motorist

2

coverage in the amount of $25,000 to any one person and up to $50,000 to all persons eligible for coverage.

Wade subsequently reached a partial settlement with the Bruce defendants, through the payment of the full limits of their liability insurance policy in exchange for a limited liability release. Wade also settled his claims against Bergh and Froman, as well as Froman's employer, for a total sum of $30,000, which was an amount less than the full amount of their respective liability policy coverages. Wade executed a general release with respect to Bergh, Froman, and Froman's employer and dismissed these defendants with prejudice.

Allstate, as Wade's uninsured motorist ("UM") carrier, consented to the dismissal of Bergh, Froman, and Froman's employer, but it expressly noted that it did not waive any defenses regarding Wade's claim for UM benefits. Allstate subsequently moved for summary judgment, contending that under the UM provision in Wade's policy, it was not obligated to pay on Wade's claim for UM benefits since he had not exhausted the limits of the insurance liability protection available to all named-defendants. The trial court granted Allstate's motion, finding that the UM provision clearly and unambiguously provided that Allstate was not obligated to pay benefits because Wade did not exhaust the limits of insurance for all defendants.

3

On appeal, Wade contends that the trial court erred in concluding that Allstate was not required to pay benefits because he had exhausted the limits at least with respect to one named defendant, and that Allstate's UM liability could not be determined until the liability of all drivers had been apportioned. We agree.

> Under Georgia law, insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy. Thus, a carrier may agree to insure against certain risks while declining to insure against others. In construing an insurance policy, we begin, as with any contract, with the text of the contract itself. One of the most well-established rules of contract construction is that the contract must be construed as a whole, and the whole contract should be looked to in arriving at the construction of any part.
>
> . . .
>
> When faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous. A policy which is susceptible to two reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction. Where a term of a policy of insurance is susceptible to two or more reasonable constructions, and the resulting ambiguity cannot be resolved, the term will be strictly construed against the insurer as the drafter and in favor of the insured.

(Punctuation and footnotes omitted.) *Murphy v. Ticor Title Insurance Co.*, 316 Ga. App. 97, 99-100 (1) (729 SE2d 21) (2012).

Here, the UM provision in Wade's UM policy with Allstate provides that "[Allstate] will pay damages that an insured person . . . is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury or property damage sustained by the insured person." The policy defines an uninsured auto as an underinsured motor vehicle. The policy contains an exhaustion requirement, which provides that

> [Allstate is] not obligated to make any payment for bodily injury or property damage under this coverage which arises out of an accident involving the use of an underinsured motor vehicle until after the limits of liability for all liability protection in effect and *applicable* at the time of the accident have been exhausted by payment of judgments or settlements.

(Emphasis added.)

Nowhere in the policy is the term "applicable" defined. If a term is undefined in the insurance policy, we look to dictionaries to supply the commonly accepted meaning of the term. *Alea London Ltd. v. Lee*, 286 Ga. App. 390, 393 (1) (649 SE2d 542) (2007). The term "applicable" means "capable of or suitable for being applied." See Merriam-Webster's Online Dictionary, http://www.merriam-webster.com /dictionary/applicable. In this case, however, there has been no determination as to

5

which insurance coverage is capable of or suitable for being applied because there has been no apportionment of damages, as mandated by OCGA § 51-12-33.

That statute pertinently provides:

Where an action is brought against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

OCGA § 51-12-33 (b). Under OCGA § 51-12-33 (c), "[i]n assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit." The purpose of the apportionment statute, OCGA § 51-12-33, is to ensure that each tortfeasor responsible for the plaintiff's harm, including the plaintiff himself, be held responsible only for his or her respective share of the harm. See *Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 365 (1) (729 SE2d 378) (2012).

6

Since a tortfeasor is not responsible to pay for the damages caused by another, it stands to reason that an individual tortfeasor's liability insurance is not "applicable" to pay for any other tortfeasor's damages. This interpretation is consistent with the language of the UM policy that "[Allstate] will pay damages that an insured person . . . is legally entitled to recover from the *owner or operator of an uninsured auto* because of bodily injury or property damage sustained by the insured person." (Emphasis added.). This provision necessarily shows that Wade is entitled to UM benefits if there is an uninsured or underinsured motorist who is legally responsible for his damages. As applied in this case, if the evidence reveals that the limits of Bruce's insurance coverage do not cover his apportioned share of Wade's damages, Wade would be legally entitled to recover UM benefits.[1]

---

[1] Under the "added on" UM coverage that applies in this case, benefits are provided up to the limits of the injured claimant's coverage for the amount that the claimant's actual losses exceed the liability coverage on the tortfeasor's motor vehicle, and it matters not that the available liability coverage on the tortfeasor's motor vehicle is equal to or greater than the claimant's UM coverage. OCGA § 33-7-11 (b) (1) (D) (ii) (I); see also Ga. Automobile Ins. Law § 32:3 (2013 ed.). Of course, the maximum UM coverage is dictated by the insurance policy, which in this case is limited to $25,000 per person up to maximum of $50,000 for all persons.

7

That each tortfeasors' insured coverage be evaluated in conjunction with his apportionment of fault squares with the intent of the UM statute.

> The purpose of uninsured motorist legislation is to require some provision for first-party insurance coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers. The Georgia uninsured motorist statute is designed to protect the insured as to his actual loss, within the limits of the policy or policies of which he is a beneficiary.

(Citations and punctuation omitted.) *State Farm Mut. Automobile Ins. Co. v. Adams*, 288 Ga. 315, 316-317 (702 SE2d 898) (2010).

As to Bruce, Wade has exhausted Bruce's liability coverage and taken the appropriate measures to pursue UM benefits against Allstate. Under OCGA § 33-24-41.1, a party may satisfy the exhaustion requirement by accepting the limits of a tortfeasor's insurance coverage and executing a limited release of the tortfeasor and its insurer, relieving them from all liability, but retaining the right to pursue his own insurer for other available coverage, including UM coverage. See *Kent v. State Farm Mutual Auto. Ins. Co.*, 233 Ga. App. 564, 565 (1) (504 SE2d 710) (1998). Since Wade accepted the limits of Bruce's liability insurance coverage and executed a limited-liability release under OCGA § 33-24-41.1, he is entitled to pursue UM benefits to the extent Bruce was underinsured. See *Daniels v. Johnson*, 270 Ga. 289, 290-291 (2)

8

(509 SE2d 41) (1998) (plaintiff satisfied exhaustion requirements required by OCGA § 33-24-41.1 by settling for the limits of underinsured's liability coverage, even though "deemer" provided additional coverage); compare *Holland v. Cotton States Mut. Ins. Co.*, 285 Ga. App. 365, 366-367 (1) (646 SE2d 477) (2007) (plaintiff prevented from seeking UM benefits from her UM carrier because she settled with a liability carrier for less than the policy limits and, therefore, failed to exhaust available liability coverage).

We are unpersuaded by Allstate's arguments that since Wade named several tortfeasors in his suit, all of their respective insurance coverages were required to be applied in this case and, therefore, Wade's failure to exhaust the limits of all coverages precludes him from recovering UM benefits. Clearly, Wade's failure to exhaust the policy coverages of the dismissed defendants – Bergh, Froman, and Froman's employer – and his general release of claims against these individuals would preclude his ability to pursue UM benefits for his uncovered losses for which these defendants are deemed responsible.[2] See *Kent*, supra, 233 Ga. App. at 565 (1)

_____

[2] If a fact-finder were to find that these dismissed defendants' proportion of Wade's damages is greater than the amounts they paid to settle the claims against them, Wade would be barred from seeking additional recovery based upon his settlement and general release. See OCGA § 51-12-33 (f) (1), (2) (providing that assessments of percentages of fault of nonparties shall be used only in determination

9

(holding that plaintiffs defeated their ability to recover damages from their UM carrier by dismissing the claims with prejudice against the defendant driver even though the plaintiffs executed a limited liability release); *Rodgers v. St. Paul Fire &c. Ins. Co.*, 228 Ga. App. 499, 501 (1) (492 SE2d 268) (1997) (a claimant who executed a general release after settling with the tortfeasor's liability insurer could not then seek recovery from his UM insurer). Nevertheless, Wade's settlement with these other defendants, who may be found to have little or no fault, does not preclude him from seeking UM benefits based on the possibility that Bruce is underinsured. OCGA § 51-12-33 (d) (1) specifically states: "Negligence or fault of a nonparty *shall be* considered if the plaintiff entered into a settlement agreement with the nonparty[.]" (Emphasis supplied.). Moreover, the law favors compromise, and Allstate should not benefit from Wade's good fortune in reaching settlements with defendants who may not be liable. See *Broda v. Dziwura*, 286 Ga. 507, 509 (689 SE2d 319) (2010).

To the extent Allstate relies upon *Sanborn v. Farley*, 192 Ga. App. 376, 377 (385 SE2d 6) (1989) to support its argument, that case does not resolve the issue. Unlike here, the issues of liability were fully resolved in *Sanborn* before the injured

of the percentage of fault of named parties and findings of fault by nonparty shall not subject nonparty to liability in any action or be introduced as evidence of liability in any action).

10

passenger sought UM benefits from her own insurance carrier and from the driver's insurance carrier. Id. at 376. Additionally, *Sanborn* involved the method of calculating how much UM coverage in total was available under the "set-off" or "reduced" UM coverage that was the default coverage before 2009.[3] Id. at 376-377. This Court held that under the "reduced" UM coverage, the proper method for determining UM exposure was to subtract the total liability coverage from the total uninsured motorist coverage. Id. at 377; see also OCGA § 33-7-11 (b) (1) (D) (ii) (II) (providing "reduced" coverage). The holding of *Sanborn* does not further Allstate's argument, because the issue of how to calculate UM benefits in this case would not be under the "reduced" coverage method and, more importantly, is premature given that there has been no determination of fault among the parties. Moreover, in *Sanborn*, this Court specifically rejected the insured passenger's argument which would have allowed her to collect UM benefits greater than the per-person, per-accident limits in her policy. See *Sanborn*, supra, 192 Ga. App. at 377. No matter the

---

[3] For policies issued, delivered or renewed on and after January 1, 2009 – the effective date of the 2008 amendment to the uninsured motorist statute – OCGA § 33-7-11(b) (1) (D) (ii) requires that motor vehicle insurers must provide insureds the option of selecting either "added on" UM coverage or "reduced" UM coverage. See Ga. Laws 2008, Act 801, §§ 1, 5, effective January 1, 2009; Ga. Automobile Ins. Law § 32:3.

11

total amount of uncovered damages that Wade may have suffered, he would only be entitled to UM coverage up to the limits set forth in his policy.

Given the purpose of the UM statute to protect innocent victims from the negligence of drivers who are uninsured or underinsured, Allstate cannot be released from the case at this point because Wade may still have uncovered losses with respect to Bruce that could legally entitle him to UM benefits. Therefore, we remand for a factual determination of Wade's damages and for an apportionment of fault, such that Wade is given the opportunity to establish Bruce's share of harm. This resolution will determine whether Wade has any uncovered losses as to Bruce and, more pertinently, whether Wade can collect UM benefits from Allstate based upon any uncovered losses.

*Judgment reversed and remanded. Barnes, P. J., and Ray, J., concur.*