**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 16, 2017**

# In the Court of Appeals of Georgia

A17A1722. GRANGE INDEMNITY INSURANCE COMPANY v.
BEAVEX, INC.

ANDREWS, Judge.

This appeal is from the grant of summary judgment for BeavEx, Inc., a delivery services broker, in an action seeking to impose vicarious liability for a motor vehicle collision involving a driver BeavEx hired as an independent contractor. We affirm.

On March 17, 2014, as Pathe Sarr was making a delivery to Wells Fargo Bank pursuant to a BeavEx referral, he collided with the vehicle of Edward and Patricia Morris. The Morrises sued Sarr and BeavEx to recover for injuries sustained in the collision. On March 31, 2017, the trial court granted summary judgment for BeavEx on the grounds Sarr was an independent contractor, not an employee. Grange

Indemnity Insurance Company then filed this appeal as the Morrises' purported uninsured/underinsured motorist carrier.

Grange contends the trial court erred in finding Sarr was an independent contractor to BeavEx, either on the grounds the evidence contained at least an issue of fact as to the existence of an employer/employee relationship, or on the grounds Sarr was BeavEx's statutory employee under the Federal Motor Carrier Safety Regulations.

> In determining whether the relationship of parties under a contract for performance of labor is that of employer and servant or that of employer and independent contractor, the chief test lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract. Where the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control.

(Citation omitted.) *Larmon v. CCR Enterprises*, 285 Ga. App. 594, 595 (647 SE2d 306) (2007). See also, *McLaine v. McLeod*, 291 Ga. App. 335, 339 (1) (661 SE2d 695) (2008).

2

In the instant case, on August 7, 2012, BeavEx contracted with Sarr to provide delivery services as an independent contractor for customers located by BeavEx. That contract specified that Sarr, as an independent owner/operator, "shall be responsible for the manner and means of securing the end result of the provision of services under this Contract and shall use its own independent judgment and discretion for the most effective and safe manner in conducting pick-up and delivery services. Broker shall exercise no direct control over Owner/Operator, nor the method or means used by Owner/Operator in the performance of such services, including the selection of routes." Further, Sarr had to provide his own vehicle; he had to maintain vehicle and cargo insurance; he had to pay for all his operating costs and expenses; he had to satisfy any specific conditions set by the customers; he received a 1099 form and was not treated as an employee for any tax purposes; he was not covered under BeavEx's workers' compensation or unemployment insurance coverage; and he was not eligible to participate in any BeavEx pension plan or insurance plans of any type. Due to security concerns of the customers, Sarr was required to wear an identification badge bearing BeavEx's logo and indicating he was an authorized owner/operator for BeavEx.

The contract between BeavEx and Sarr clearly described an independent contractor relationship. But Grange argues the evidence shows that BeavEx nevertheless asserted sufficient control over the time, manner, and method of Sarr's deliveries for his bank customers, that an issue of fact existed as to whether Sarr was an employee or an independent contractor. Specifically, Grange contends the following requirements demonstrated BeavEx's control over Sarr: 1. requiring Sarr to wear a company shirt and identification badge; 2. requiring Sarr to make the deliveries within a specified time period; 3. requiring Sarr to provide an annual driving record and to allow BeavEx to inspect his vehicle; 4. and requiring Sarr to report any accidents to BeavEx so it could inform the actual customer.

However, regarding the identification badge and company shirt, the contract between BeavEx and Sarr explains the customers required them due to security concerns. So that control was attributable to the third party customers, not BeavEx. Regarding the times set for pickups and deliveries, Sarr testified in his deposition that when BeavEx assigned a delivery order, it provided a manifest specifying the times and branch locations, but Sarr did not know whether BeavEx or the customer banks set the times. But the contract clearly states that the customers, and not BeavEx, set the times for performance, and that the manifest was provided to owners/operators so

4

that they could make an informed decision as to whether to accept or reject an assignment.

Inspecting Sarr's vehicle, and the policy of having owners/operators call BeavEx in case of a problem that delays a delivery, address a legitimate concern that owners/operators are able to carry out brokered deliveries. Sarr's compliance with those requirements pertained to his ability to complete deliveries to customers who contracted with BeavEx for delivery services, and did not demonstrate BeavEx's control over the time and manner of executing the assigned work. "It is . . . well settled in practically all courts that the right of the employer to exercise a certain control over the work, where the control reserved does not apply to the manner of doing the details of the work, and does not thereby take the work out of the hands of the contractor, but goes merely to a general supervision to insure that the ends prescribed by the contract shall be substantially met, does not destroy the independence of the relation." *Bentley v. Jones,* 48 Ga. App. 587, 592 (173 SE 737) (1934).

Grange also contends that even if Sarr is not considered BeavEx's employee under traditional legal principles, he was BeavEx's statutory employee under the Federal Motor Carrier Safety Regulations (49 CFR §390 et seq.) However, those

5

regulations do not apply here. Those regulations apply to "employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce." 49 CFR §390.3 (a) (1). 49 CFR § 390.5 defines, in pertinent parts, an employer as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it . . ."; an employee as "any individual . . . who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle . . ."; and a commercial motor vehicle as a "motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle (1) has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more... or (2) is designed or used to transport more than 8 passengers . . . ."

In the instant case, Sarr was driving his own Honda Civic at the time of the collision, and nothing in the record shows that such a small passenger sedan met the above definition of a commercial motor vehicle. Further, Sarr's delivery routes were to local banks in the metro Atlanta area, and there was no evidence showing those deliveries affected interstate commerce. The evidence of record thus provided no

basis for finding Sarr to be the statutory employee of BeavEx under the provisions of the Federal Motor Carrier Safety Regulations.

*Judgment affirmed. Ellington, P. J., and Rickman, J., concur.*