**SECOND DIVISION**
**MARKLE, J.,**
**LAND and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 30, 2025**

# In the Court of Appeals of Georgia

A24A1826. GEORGIA INSURERS INSURERS INSURERS POOL v.
    LOGISTICARE SOLUTIONS, LLC.
A25A0012. JONES v. LOGISTICARE SOLUTIONS, LLC.

DAVIS, Judge.

The plaintiff and the intervenor in this negligence action appeal from the trial court's order granting summary judgment to defendant LogistiCare Solutions, LLC ("LogistiCare"), on the basis that there was no evidence that the defendants who allegedly caused the plaintiff's injuries were LogistiCare's agents. Because we conclude that there is a genuine issue of material fact as to whether an agency relationship existed, we reverse the court's order.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all

reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Wade v. Allstate Fire & Cas. Co.*, 324 Ga. App. 491 (751 SE2d 153) (2013).

So viewed, the evidence here shows that the Georgia Department of Community Health ("DCH") administers Georgia's Medicaid program, and LogistiCare contracted with DCH to serve as a broker for the provision of non-emergency medical transportation to certain qualified Medicaid members in Georgia.[1] Under its contract with DCH, LogistiCare was "responsible for the management, supervision and monitoring of all transportation provided." As part of the negotiations to secure the contract, LogistiCare told DCH that it would provide "careful management" of its transportation providers and that it would use "a comprehensive suite of programs to monitor, train and mentor" such providers. LogistiCare contrasted itself with other transportation brokers "who hire providers, give them cursory instructions, and leave them to their own devices."

---

[1] LogistiCare is now known as ModivCare Solutions, LLC. Because the name change occurred after the timeframe at issue in this case, we will refer to the company as "LogistiCare."

LogistiCare subsequently entered into a contract with Bethlehem Transportation, Inc. ("Bethlehem"), for Bethlehem to serve as its transportation provider. The contract stated that Bethlehem was an independent contractor and was responsible for the payment, taxes, and insurance of its own employees. The contract stated that LogistiCare would refer transportation requests from Medicaid members to Bethlehem. Bethlehem was required to keep an office location open Monday through Friday until 6:00 p.m. that was equipped with a telephone line and a fax line for LogistiCare to contact it. Bethlehem was generally required to accept the transportation requests[2] and to pick-up and drop-off riders at the times specified by LogistiCare, which were based on the time of the riders' medical appointments. Bethlehem was also required to use trip log and invoice sheet forms provided by LogistiCare.

LogistiCare specified what type of vehicle Bethlehem needed to use for a particular trip based on the needs of the rider. Although Bethlehem used its own vehicles, it was required to have its vehicles inspected and approved by LogistiCare

---

[2] Bethlehem was allowed to reject up to 15 percent of requested trips each month. Additionally, upon consultation with LogistiCare, Bethlehem could refuse to transport a person who posed a safety threat.

before being put into service, and its vehicles were subject to ongoing inspection and approval by LogistiCare. Although Bethlehem hired its own drivers and decided which drivers to assign to trips, its drivers needed to be approved by LogistiCare before they could begin transporting riders, and LogistiCare could stop using the services of Bethlehem or any of its drivers at any time for any reason. LogistiCare required drivers to undergo a "stringent" training program that included topics such as safe driving and wheelchair placement and securement. LogistiCare's contract with Bethlehem contained detailed requirements for driver conduct, including specifications as to what drivers must wear, where they were must park, how they must make their presence known to riders, and how they must load, secure, and unload riders, including riders in wheelchairs.

LogistiCare received a trip request from Debra Jones for transportation to a medical appointment on July 20, 2018. Bethlehem driver Calvin Simmons picked up Jones, who was in a wheelchair, from her home and loaded her in the vehicle. According to Jones, Simmons did not properly secure her wheelchair, and as a result she was thrown to the floor and sustained injuries when he slammed the brakes during the trip.

Jones filed this negligence action against Bethlehem, LogistiCare, and Simmons.[3] Jones alleged that Simmons failed to exercise ordinary care in driving her and securing her wheelchair, that Bethlehem negligently hired, trained, supervised, and retained Simmons, and that LogistiCare was vicariously liable for the negligence of Bethlehem and Simmons because it had the right to control the time and manner of executing their work.

The trial court entered default judgment against Bethlehem as to liability. Bethlehem's motor vehicle liability insurer became insolvent and was placed into liquidation by an Illinois court. All Georgia claims of Bethlehem's insurer were transferred to the Georgia Insurers' Insolvency Pool ("the Pool"), which filed a complaint-in-intervention in this case.[4] The Pool argued that because Bethlehem was

---

[3] Jones also named as defendants John Does I, II, and III.

[4]     The . . . Pool is a non-profit legal entity created by the Georgia General Assembly and governed by the [Georgia Insurer's Insolvency] Pool Act, OCGA § 33-36-1 et seq. OCGA § 33-36-6. The Pool provides a limited safety net for insurers that experience liquidation pursuant to the "Insurers Rehabilitation and Liquidation Act," OCGA § 33-37-1 et seq. When an insurance company is placed into liquidation, all existing claims of the insolvent carrier are

5

the agent of LogistiCare and because LogistiCare was thus liable for any negligence by Bethlehem, LogistiCare's solvent insurance carrier should be deemed primary in this case and Jones needed to exhaust all coverage under that carrier's policy before the Pool would be obligated to provide secondary coverage.

LogistiCare filed a motion for summary judgment as to the claims of Jones and the Pool, arguing that because Bethlehem was merely an independent contractor and

> transferred to the Pool by the liquidator and the Pool undertakes responsibility for the handling and administration of those claims in keeping with the Pool Act. OCGA § 33-36-9. The Pool then steps into the shoes of the insolvent insurer: "The Pool shall be deemed the insurer only to the extent of its obligation on the covered claims and to such extent, subject to the limitations provided in this chapter, shall have all rights, duties, and obligations of the insolvent insurer." OCGA § 33-36-9. The Pool is then "responsible for the investigation, adjustment, compromise, settlement, and payment of covered claims; for the investigation, handling, and denial of noncovered claims; and for the management and investment of funds administered by the pool." OCGA § 33-36-2.

(Punctuation omitted.) *Ga. Insurers Insolvency Pool v. DuBose*, 349 Ga. App. 238, 241 (1) (825 SE2d 606) (2019).

6

not an employee of LogistiCare, LogistiCare was not liable for any negligence of Bethlehem, and Jones' claims were not within the coverage of LogistiCare's solvent insurance carrier. The trial court granted LogistiCare's motion, concluding that there was no issue of material fact as to whether LogistiCare sufficiently retained the right to direct or control the time and manner of executing the work performed by Bethlehem or Simmons to be deemed their employer. The Pool then filed the appeal in Case No. A24A1826, while Jones filed the appeal in Case No. A25A0012.

*Case No. A24A1826*

1. In this appeal, the Pool argues that the trial court erred in finding that there was no issue of material fact as to whether LogistiCare had the right to control the time, manner, and method of the work performed by Bethlehem. We agree.

"Although an employer may be held vicariously liable for the torts of an employee, such liability does not extend to torts committed by an independent contractor." (Citation omitted.) *Broadnax v. Daniel Custom Constr., LLC*, 315 Ga. App. 291, 294 (1) (726 SE2d 770) (2012); see also OCGA § 51-2-4 ("An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction

7

and control of the employer."). "However, there are exceptions to this general rule." *Broadnax*, supra, 315 Ga. App. at 294 (1). Notably, OCGA § 51-2-5 (5) provides that "[a]n employer is liable for the negligence of a contractor . . . [i]f the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference."

> The test for determining whether an employer is exercising a degree of control over an independent contractor's work such that the law will deem the independent contractor to be a servant of that employer — thus making the employer vicariously liable for any wrongful acts committed by the contractor — is whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right to merely require certain definite results in conformity with the contract.

(Citation omitted.) *Broadnax*, supra, 315 Ga. App. at 294 (1).

"[I]n order to impose liability on a defendant under OCGA § 51-2-4, the employer must have retained at least some degree of control over the manner in which the work was done." (Citation and punctuation omitted.) *McLaine v. McLeod*, 291 Ga. App. 335, 339 (1) (661 SE2d 695) (2008). "It is not enough that he has merely a

8

general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations." (Citation omitted.) Id. "Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, as to operative details. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." (Citation omitted.) Id.

"The real test by which to determine whether a person is acting as the servant of another is to ascertain whether at the time when the injury was inflicted he was subject to such person's orders and control, and was liable to be discharged by him for disobedience of orders or misconduct." (Citation omitted.) *Redd v. Brisbon*, 113 Ga. App. 23, 24 (147 SE2d 15) (1966). Indeed, "the power to discharge has a strong tendency to show that the relation of master and servant existed between them." (Citation and punctuation omitted.) Id. at 24-25. "The right to control the manner and method means the right to tell the employee how he shall go about doing the job in every detail, including what tools he shall use and what procedures he shall follow." (Citation omitted.) *RBF Holding Co. v. Williamson*, 260 Ga. 526 (397 SE2d 440)

9

(1990). "The right to control the time of doing the job means the right to control the hours of work." (Citation omitted.) Id.

"[I]f the contract clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control" over the time, manner, and method of executing the work. (Citation and punctuation omitted.) *Adcox v. Atlanta Bldg. Maintenance Co., Inc.*, 301 Ga. App. 74, 77 (2) (687 SE2d 137) (2009). "Whether the relationship is one of employer/employee or employer/independent contractor is generally a question of fact to be decided by a jury." (Citation and punctuation omitted.) *Cajun Contractors, Inc. v. Peachtree Property Sub, LLC*, 360 Ga. App. 390, 394 (1) (a) (861 SE2d 222) (2021).

The contract between LogistiCare and Bethlehem classified Bethlehem as an independent contractor. Thus, to overcome the presumption that Bethlehem was an independent contractor, there must be some evidence showing that LogistiCare controlled the time, manner, method, and means of the work. See *Ward v. DirecTV, LLC*, 342 Ga. App. 69, 71 (1) (801 SE2d 110) (2017). A thorough review of the record shows that there is sufficient evidence to create a jury question on this issue.

As an initial matter, LogistiCare was contractually bound with DCH to carefully manage and supervise Bethlehem as its transportation provider, and it told DCH that it would not simply give Bethlehem cursory instructions and leave it to its own devices. And there is some evidence that LogistiCare's contract with Bethlehem gave LogistiCare the right to control the time, manner, and method of the performance of Bethlehem's work. Specifically, there is some evidence that LogistiCare controlled the hours of work in that it dictated Bethlehem's office hours, it generally required Bethlehem to accept ride requests, and it specified pick-up and drop-off times. See *American Assn. of Cab Cos., Inc. v. Parham*, 291 Ga. App. 33, 35-36 (1) (661 SE2d 161) (2008) (evidence supported jury's finding that taxi company exerted some control over the time, manner, and method of driver's employment, where there was evidence that whenever the company called the driver with a passenger, he picked the passenger up); *Davis v. Beasley Timber Co., Inc.*, 241 Ga. App. 706, 708 (1) (527 SE2d 221) (1999) ("Although there is evidence to support the conclusion that [a driver] was an independent contractor, i.e., method of payment and ability to make personal stops on the way to the mill, there is also evidence to support the conclusion that [the employer] maintained sufficient control over [the driver] so that he can be considered

11

an employee, i.e., instructions regarding company policies and direction regarding timing and destination of hauls.").

There is also some evidence that LogistiCare told Bethlehem what procedures it must follow, given the detailed requirements for driver training and conduct specified in their contract. See *Broadnax*, supra, 315 Ga. App. at 294-295 (1) (genuine issue of material fact existed as to whether the degree of control exercised by employers over a contractor's lawn maintenance work was sufficient to impose vicarious liability, where the employers described the manner in which the contractor was to perform specific tasks); cf. *Grange Indem. Ins. Co. v. BeavEx, Inc.*, 342 Ga. App. 601, 601-603 (804 SE2d 173) (2017) (driver hired by delivery services broker was an independent contractor, where their contract stated that driver would "use its own independent judgment and discretion for the most effective and safe manner in conducting pick-up and delivery services").

Indeed, the evidence that LogistiCare required drivers to undergo training on how to secure passengers in wheelchairs and established mandatory procedures for securing such passengers is particularly significant. The reason for the general rule of non-liability in OCGA § 51-2-4 "is that since the employer has no right of control over

the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it." (Citation and punctuation omitted.) *Peachtree-Cain Co. v. McBee*, 254 Ga. 91 (1) (327 SE2d 188) (1985). Given the evidence of LogistiCare's control over the issue that allegedly caused Jones' injuries, it is not apparent that LogistiCare should be insulated from vicarious liability as a matter of law. See *Slater v. Canal Wood Corp. of Augusta*, 178 Ga. App. 877, 878 (1) (345 SE2d 71) (1986) ("One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.") (citation omitted).

There is also some evidence that LogistiCare told Bethlehem what "tools" it must use by specifying the type of vehicle that needed to be used for a particular trip and by subjecting its vehicles to LogistiCare's inspection and approval. Cf. *Stubbs Oil Co., Inc. v. Price*, 357 Ga. App. 606, 614 (2) (848 SE2d 739) (2020) (there was no evidence that an employer exercised sufficient control over an independent contractor

in order to impose vicarious liability, where the employer merely hired the contractor to transport its fuel products "but had no input as to the driver or the vehicle [the contractor] would use to complete that task"). LogistiCare's requirement that it approve any drivers before they began making trips, and its ability to terminate the services of Bethlehem or any of its drivers at any time for any reason, constitutes further evidence of control. See *Golosh v. Cherokee Cab Co.*, 226 Ga. 636, 638 (176 SE2d 925) (1970) ("We have no hesitancy in holding that, nothing else appearing, this evidence as to the power to terminate the employment alone is sufficient evidence to authorize a finding that the cab company had the right to control the time, manner and method of doing the work."); *Redd*, supra, 113 Ga. App. at 24-25.

Accordingly, we conclude that "[t]he trial court erred in holding that the evidence showed as a matter of law that [Bethlehem] was an independent contractor. Although there is certainly some evidence supporting such a proposition, by no means was the evidence undisputed. Summary judgment on this issue was in error." See *Atkins v. MRP Park Lake, L. P.*, 301 Ga. App. 275, 281 (1) (b) (687 SE2d 215) (2009).

2. The Pool also argues that LogistiCare was not entitled to summary judgment with respect to the Pool's claims for relief under the Pool Act. However, the trial

court did not rule on these claims for relief, only ruling that there was no issue of material fact as to whether LogistiCare sufficiently retained the right to direct or control the time and manner of executing the work performed by Bethlehem or Simmons to be deemed their employer. "Consequently, without a ruling on these specific questions, these issues are outside the proper scope of our review." (Citation and punctuation omitted.) *City of Sandersville v. Usry*, 365 Ga. App. 426, 432 (2) (878 SE2d 768) (2022).

3. Lastly, the Pool argues that the trial court erred in failing to consider whether LogistiCare was responsible for Bethlehem's negligence under OCGA § 51-2-5 (3) & (4).[5] Given our conclusion that there is a genuine issue of material fact as to whether LogistiCare could be held vicariously liable under OCGA § 51-2-5 (5), we need not consider whether LogistiCare could be held vicariously liable under other provisions of the statute.

*Case No. A25A0012*

---

[5] These provisions allow for an employer to be held liable for the negligence of a contractor if the wrongful act is the violation of a duty imposed by express contract upon the employer or is the violation of a duty imposed by statute. OCGA § 51-2-5 (3) & (4).

4. In this appeal, Jones argues that the trial court erred in finding that there was no issue of material fact as to whether LogistiCare had the right to control the time, manner, and method of the work performed by Bethlehem, and that the trial court erred in failing to consider whether LogistiCare was responsible for Bethlehem's negligence under OCGA § 51-2-5 (3) & (4). For the reasons stated above in Division 1, we conclude that genuine issues of material fact remain on Jones's negligence claim, and in light of this conclusion, it is unnecessary for us to address whether LogistiCare could be held vicariously liable under OCGA § 51-2-5 (3) & (4).

For the foregoing reasons, we reverse the trial court's order granting summary judgment to LogistiCare.

*Judgment reversed. Markle and Land, JJ., concur.*